UNITED STATES, Appellee,

v.

Ilessie WHITE, Sr., Private First Class,
U.S. Army, Appellant.

No. 52,291.
CM 444371.

U.S. Court of Military Appeals.

Nov. 10, 1986.

For Appellant: *Captain David L. Carrier* (argued); *Colonel Brooks B. La Grua, Lieutenant Colonel Arthur L. Hunt, Major Stephen R. Dooley* (on brief).

For Appellee: *Major Robert L. Swann* (argued); *Colonel James Kucera, Lieutenant Colonel Adrian J. Gravelle, Captain Kathy J.M. Peluso* (on brief); *Lieutenant Colonel Gary F. Roberson, Major Larry D. Williams,* and *Captain Frederick A. Johnson.*

*Opinion of the Court*

COX, Judge:

Appellant was convicted, contrary to his pleas, by a general court-martial composed of officer and enlisted members, of voluntary manslaughter in the death of his 2–year-old son, in violation of Article 119, Uniform Code of Military Justice, 10 U.S.C. § 919. He was sentenced to a dishonorable discharge, confinement for 8 years, total forfeitures, and reduction to Private E–1. The findings and sentence were approved by the convening authority and affirmed by the Court of Military Review. 19 M.J. 995 (1985).

This Court granted review of four issues:

**I**

WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION BY PERMITTING TESTIMONY ON PRIOR INJURIES INFLICTED ON THE CHILD AND ON THE "BATTERED CHILD SYNDROME" AS THIS TESTIMONY WAS IRRELEVANT BECAUSE THERE WAS NO EVIDENCE APPELLANT INFLICTED THE PRIOR INJURIES, AND BECAUSE THIS EVIDENCE WAS MORE PREJUDICIAL THAN PROBATIVE.

**II**

WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION BY ADMITTING INTO EVIDENCE PHOTOGRAPHS OF THE VICTIM SHOWING HIS PRIOR INJURIES INASMUCH AS THE PREJUDICIAL IMPACT OF THESE PHOTOGRAPHS FAR OUTWEIGHED ANY PROBATIVE VALUE THEY MIGHT HAVE HAD.

**III**

WHETHER APPELLANT WAS SUBSTANTIALLY PREJUDICED BY TRIAL COUNSEL'S IMPROPER ARGUMENT THAT HE WAS A CHILD ABUSER.

**IV**

WHETHER THE MILITARY JUDGE ERRED BY DENYING THE DEFENSE MOTION FOR A MISTRIAL AFTER THE COURT WAS EXPOSED TO INADMISSIBLE EVIDENCE ALLEGING UNCHARGED MISCONDUCT.

Finding no prejudicial error, we affirm.

Senior Judge Wold in the opinion below succinctly stated the pertinent facts:

> The child died from the effects of a heavy blow with a blunt instrument while in appellant's sole care. The fatal blow broke three of the child's ribs and drove the broken end of one rib through the child's diaphragm and into his liver. The immediate cause of death was massive internal bleeding from the child's lacerated liver. At the time, appellant's arm was in a cast which extended from his elbow to the base of his fingers. One of appellant's pretrial explanations of his son's death was that he had attempted to strike his child with his fingers but missed and had hit the boy with the cast. Previously appellant had maintained that his son had injured himself by falling down stairs.
>
> Over defense objection, the Government introduced evidence of numerous prior injuries which were startlingly similar to the fatal injuries. ... Obviously, all of these "old" injuries occurred during the two years of the victim's life, during which he had been in his parents' care, and most probably in the latter portion of those two years. The expert testimony indicated that they had been

inflicted upon the victim by another person or persons. ... Appellant's wife testified that appellant frequently cared for the child alone and that she had not injured him.

19 M.J. at 995.

Dr. Joseph M. DeLorenzo, Chief Pathologist at Rancocas Valley Hospital and Chief Medical Examiner for Burlington County, New Jersey, testified that he performed an autopsy on the child. Over defense objection, he testified that his examination revealed old, as well as recent, "injuries ... in the form of old scars, old lacerations and multiple new or recent contusions of the body." He found a minimum of ten or twelve old bruises on the body and scalp in addition to an old rib fracture on the child's left side. Using photographs, introduced over defense objection that they were cumulative, inflammatory, and irrelevant, the doctor pointed out to the court members the old and new injuries. He opined, again over objection, that the medical diagnosis of the injuries was "battered child syndrome," which he defined as "a clinical condition in young children, usually below the age of three, who receive nonaccidental multiple and sometimes generalized injuries to the body."

Over defense objection, the Government next presented the testimony of Major (Dr.) Ronald Reeves, a forensic pathologist at the Armed Forces Institute of Pathology. Dr. Reeves testified that he was an expert in medical/legal aspects of child abuse. He, too, opined that the injuries to the dead child were not the result of accident. Examining an X-ray of the victim, he pointed out old fractures to ribs on both sides of the body, noting that one rib fractured at the time of death had been fractured previously in the same location. Although he could not "say who inflicted the prior injuries" or the injuries resulting in death, he stated that "to see rib fractures in the same location on both sides of the body is highly suggestive that the injuries may have been inflicted by the same individual." He indicated that the "whole 'battered child syndrome' is based upon one of the premises that child abuse is repetitive if it's serious. And generally, the cases that I have seen of repetition by an individual tends to be the same type of injury as previously inflicted."

The defense moved for a mistrial based on the lack of relevance of the "battered child syndrome" evidence, arguing that the prior injuries were not sufficiently linked to appellant. This motion was summarily denied. When arguing on findings, trial counsel emphasized the testimony concerning "battered child syndrome," maintaining that the deceased was an abused child and that appellant was the one "who was doing the abusing." The defense did not object to the argument and the military judge did not provide a limiting instruction.

■ On appeal, appellant does not contend that the medical witnesses were not "experts" within their field or that the testimony of "battered child syndrome" diagnosis was inadmissible under Mil.R.Evid. 701–705, Manual for Courts-Martial, United States, 1969 (Revised edition). Indeed, the expertise of the witnesses was not challenged at trial, and appellant did not object to the admissibility of "battered child syndrome" evidence as scientifically unsupportable under the 700 series of the Military Rules of Evidence. *See* Mil.R.Evid. 103(a)(1). Expert opinion evidence on "battered child syndrome" has been admitted in many jurisdictions, and we do not find plain error in its admission in this case. *See United States v. Bowers*, 660 F.2d 527 (5th Cir.1981). *See generally* Annot., 98 A.L. R.3d 306 (1980).

■ Nevertheless, appellant contends that evidence of prior injuries and "battered child syndrome" was inadmissible under Mil.R.Evid. 403 and 404(b). Mil.R.Evid. 404(b) does not establish an absolute bar against admissibility of evidence of other crimes, wrongs, or acts. Rather, admissibility depends, at least initially, on the purpose for which the evidence is offered. *United States v. Owens*, 21 M.J. 117 (C.M. A.1985). This requires a three-step analysis by the military judge. First, does the evidence tend to prove that the accused

committed prior crimes, wrongs, or acts? *United States v. Brooks*, 22 M.J. 441 (C.M. A.1986). Second, what is the purpose for which the evidence is offered? Third, and of equal importance, is the "probative value ... substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the members, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence"? Mil.R.Evid. 403.

■ The evidence of prior injuries and the diagnosis of "battered child syndrome" clearly established that prior crimes, wrongs, and acts were committed by someone. Appellant maintains, however, that the Government failed to prove that he was the perpetrator. Obviously, evidence of prior injuries was relevant only if appellant had inflicted them. Therefore, the evidence must support such a finding. Mil.R. Evid. 104(b). Appellant and his wife were the child's primary caretakers. The wife denied that she ever struck the child hard enough to cause bruising or bleeding, testifying that appellant was "much heavier-handed" with the child than she. Appellant was often alone with the child, and "he would beat him" on occasion. Although the wife had never noticed any sign of mistreatment when the child was left occasionally with a babysitter, she sometimes had the impression that her son had been beaten when she left him alone with appellant. Considered in the light most favorable to the Government, we are convinced that the circumstantial evidence clearly supports a finding that appellant, not someone else, battered the child on previous occasions. *See United States v. Harris*, 661 F.2d 138 (10th Cir. 1981).

■ Furthermore, the challenged evidence was offered for the permissible purposes under Mil.R.Evid. 404(b) of showing appellant's intent or state of mind in striking the child and the absence of accident. Prior to trial, appellant had offered two different explanations for the child's injuries, both versions attributing the death to accident. Initially, he told investigators and medical personnel that the child had fallen down the stairs at his home. Later, he told the investigators that he attempted to hit the child in the head with his fingers but missed. The Government had to prove that appellant's intent was to kill or inflict great bodily harm on the child, rather than merely to inflict minor corporal punishment. Also, the Government had to prove that the lethal blow was not the result of an accident. The challenged evidence was highly probative of these matters.* *See United States v. Colvin*, 614 F.2d 44 (5th Cir.), *cert. denied*, 446 U.S. 945, 100 S.Ct. 2174, 64 L.Ed.2d 802 (1980).

"Battered child syndrome" is a medical diagnosis that a child suffered injuries by other than accidental means. It has been described as follows:

> The diagnosis [of battered child syndrome] is dependent on inferences, not a matter of common knowledge, but within the area of expertise of physicians whose familiarity with numerous instances of injuries accidentally caused qualifies them to express with reasonable probability that a particular injury or group of injuries to a child *is not accidental or is not consistent with the explanation offered therefor but is instead the result of physical abuse by a person of mature strength.*

*State v. Tanner*, 675 P.2d 539, 542 (Utah 1983) (quoting *State v. Mulder*, 29 Wash. App. 513, 629 P.2d 462, 463 (1981)) (emphasis added). The medical testimony that the child's prior injuries and death were inconsistent with accident supported the Government's theory that appellant, who was alone with the child when the fatal blows

---

* In *United States v. Woods*, 484 F.2d 127 (4th Cir.1973), *cert. denied*, 415 U.S. 979, 94 S.Ct. 1566, 39 L.Ed.2d 875 (1974), it was stated that the evidence of repeated incidents is particularly relevant in cases involving abuse or death of an infant, as it may be the only evidence that a crime was committed. The victim in *Woods*, as in the present case, was of tender years, "a helpless, defenseless unit of human life ... too young, if he survives to relate the facts concerning the attempt on his life, and too young, if he does not survive, to have exerted enough resistance that the marks of his cause of death will survive him." *Id.* at 133.

were struck, intended to kill or cause great bodily harm.

◼ The question remains whether the evidence of the prior injuries and expert opinion concerning "battered child syndrome" was *unduly* prejudicial. *See generally United States v. Abel,* 469 U.S. 45, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984). Of course, the evidence was prejudicial, as probative evidence offered by the Government is expected to be. The question is whether the Government gained an "unfair advantage ... from the capacity of the evidence to persuade by illegitimate means." *State v. Holland,* 346 N.W. 2d 302, 309 (S.D. 1984). We think not. We are satisfied that the challenged evidence was relevant, highly probative of critical issues, and not unfairly prejudicial. Thus, the military judge did not abuse the wide discretion accorded him in determining admissibility of evidence under Mil.R.Evid. 403.

◼ We turn next to the photographs which appellant claims were cumulative and introduced only to inflame and arouse the passion of the members of the court. This evidentiary ruling is also governed by Mil.R.Evid. 403. It is well-settled that photographs are not admissible for the illegitimate purpose of inflaming or shocking the court-martial. If "the item of proof is admissible for a legitimate purpose, the fact that it also may possibly tend in this undesirable direction is, in and of itself, no ground for reversal." *United States v. Bartholomew,* 1 U.S.C.M.A. 307, 314, 3 C.M.R. 41, 48 (1952). After reviewing the testimony of the medical experts, specifically focusing on their use of the photographs to explain and illustrate their testimony and expert opinions to the court members, we conclude that the photographs were introduced for a legitimate purpose and aided the factfinding process by making the medical testimony easier to understand. Of course, "[a] battered child is not a pretty picture," *United States v. Harris, supra* at 142. Here, however, the probative value of the evidence far outweighed any danger of unfair prejudice. Accordingly, we find no abuse of discretion by the military judge in admitting the photographs.

◼ It follows from the above determinations that the remaining issues are also resolved adversely to appellant. The military judge properly denied the motion for mistrial. Although trial counsel's argument characterizing appellant as a child abuser struck a hard blow, it was within the bounds of fair comment considering the state of the evidence. Para. 72*b*, Manual, *supra.* Thus, we need not decide whether the comments constituted "plain error" requiring reversal in spite of the lack of timely objection. Mil.R.Evid. 103(d). *See United States v. Young,* 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985).

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge EVERETT concurs.

Judge SULLIVAN did not participate.