UNITED STATES

v.

Christopher R. SPINNER, Quartermaster
Third Class, U.S. Coast Guard.

CGCM 0009.
Docket No. 908.

U.S. Coast Guard Court of
Military Review.

Jan. 13, 1989.

Trial Counsel: LCDR. Frank E. Couper, USCG.

Defense Counsel: LT. M. Zmaczynski, USCGR.

Appellate Government Counsel: LCDR. Michael J. Devine, USCG.

Appellate Defense Counsel: LCDR. James Collin, USCG.

Before, Panel Two, BAUM, BARRY and GRACE, Appellate Military Judges.

BAUM, Chief Judge:

Appellant was tried by a General Court–Martial composed of officer and enlisted members. After pleading not guilty to all charges and specifications, he was convicted of one specification of larceny of beer from the Enlisted Men's Club, one specification of wrongful appropriation of a Coast Guard Yard special services recreation power boat, one specification of housebreaking, one specification of dereliction of duty as urinalysis test observer by willfully permitting tampering with a urine sample, one specification of wrongful making and possession of keys to government buildings, one specification of wrongful distribution to other members of the Coast Guard Yard Security Division of a master key to government buildings, and two specifications of wrongful communication of language suggesting commission of the offense of tampering with a urine sample, in violation of Articles 121, 130, 92 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 921, 930, 892 and 934, respectively. Before this Court, appellant has assigned the following errors:

I

EVIDENCE INTRODUCED BY THE GOVERNMENT AT TRIAL WAS INSUFFICIENT TO CONVICT THE APPELLANT FOR ALL CHARGES AND THE SPECIFICATIONS THEREUNDER, WHERE THE APPELLANT WAS FOUND GUILTY

II

THE FINDINGS OF GUILTY AS TO SPECIFICATION ONE AND SPECIFICATION TWO OF CHARGE FOUR [ALLEGING WRONGFUL MAKING, POSSESSION AND DISTRIBUTING OF KEYS OFFENSES] SHOULD BE SET ASIDE AND DISMISSED BECAUSE THE ALLEGATIONS CONTAINED THEREIN FAILED TO STATE AN OFFENSE UNDER THE UNIFORM CODE OF MILITARY JUSTICE

III

THE MILITARY JUDGE ERRED TO APPELLANT'S SUBSTANTIAL PREJUDICE BY ALLOWING TESTIMONY CONCERNING ACTS OF UNCHARGED MISCONDUCT

## IV

## THE MILITARY JUDGE ERRED BY NOT ORDERING A NEW ARTICLE 32 INVESTIGATION PURSUANT TO DEFENSE MOTION WHEN THE ARTICLE 32 INVESTIGATING OFFICER AS EVIDENCED BY HIS COMMENTS TO APPELLANT'S TRIAL DEFENSE COUNSEL ABANDONED HIS IMPARTIALITY WITH RESPECT TO APPELLANT AND AS A RESULT FATALLY COMPROMISED THE INVESTIGATION IN FACT AND BY APPEARANCE

These assignments have been fully briefed and were orally argued to the Court on December 8, 1988. After careful consideration of the written and oral arguments in conjunction with our review of the over 2,000 page record of trial, we are prepared to address the issues and render a decision.

■ We will start with Assignment of Error II which challenges the specifications under Article 134, Uniform Code of Military Justice relating to wrongful and unauthorized making, possession and distribution of certain keys to government buildings and spaces at U.S. Coast Guard Yard Curtis Bay, Baltimore, Maryland. Appellant asserts that the allegations fail to state offenses under the Uniform Code of Military Justice. While there is no specific Article under the Code which expressly covers these particular offenses, the specifications with their words of criminality clearly allege acts prejudicial to good order and discipline on their face. Appellant's argument, however, does not relate to the specifications' wording, but relies, instead, on what he says is an "objective reading of the factual scenario surrounding key control at the Coast Guard Yard." (Defense brief at 23). He goes on to spell out his position as follows:

The facts here lead to the inescapable conclusion that one, there were no written guidelines concerning key control procedures; two, there was a great deal of confusion among the appellant's three supervisors about the authority to possess and or distribute keys; and, three, that all of appellant's supervisors in the security office had knowledge of individuals possessing master keys and took no action. Under those circumstances, even if appellant knew that certain key control customs were not being rigorously followed, it is clear that there was no notice that any conduct associated with the giving out of master keys was patently prejudicial to good order and discipline or criminal. Appellant did not have due process notice that this conduct was chargeable. Under these circumstances specifications one and two of Charge IV cannot stand as specifications that state an offense and are constitutionally permissable.

Defense brief at 23.

This argument, couched as one of pleading insufficiency, appears to us, in reality, to be simply another way of arguing inadequate evidence, as has been done in Assignment of Error I for all offenses. No matter how the argument is characterized, however, it must fall of its own weight. That appellant was clearly on notice as to the wrongfulness of making, possessing and distributing master keys can be readily discerned from his own testimony at trial. After denying that he made and gave keys to other security personnel, he then described an incident which lays to rest any doubt about knowledge of wrongfulness. In this testimony, appellant recalls being at the Coast Guard Yard one night and finding one of the security watchstanders under his direct supervision coming out of the Enlisted Men's Club while on watch. Appellant said he confronted the watchstander and asked, "Do you have a master key?" When the watchstander answered, "Yes, I do," the appellant said it confirmed what he suspected, "watchstanders having keys or master keys, *other than what they were authorized on the rover key* [chain]" (Record of trial at 1416, emphasis added). As a result, he reported the matter the next day to his superiors and a meeting of all off-duty watchstanders was called in an effort to get all the keys back. The thrust of this testimony is an awareness that possession of master keys was not permitted. Whether or not we believe appellant's testimony in its entirety, we find this sworn

account of matters relating to the key offenses to be inconsistent with his contention concerning notice of criminality. Accordingly, we have no hesitation rejecting the argument that appellant had no due process notice that this conduct was a crime. We find the specifications in question adequately allege offenses under the Uniform Code of Military Justice.

■ In Assignment of Error III, appellant challenges the admission at trial of uncharged misconduct evidence. That evidence related to purported actions in December 1985 by appellant with respect to three individuals not named in any of the charged offenses. Specifically, each of those individuals testified before the court members that during the urinalysis testing alleged in specifications under Charge IV, appellant, as observer for that testing, asked him certain questions before he provided a urine sample. One person said he was asked whether he was "dirty", the other two, whether they were "clean." Appellant was said to have asked one if he needed any kind of help and two of the witnesses testified that water was running from a faucet when questions were asked. This testimony was offered by the trial counsel to show a method or plan by appellant to facilitate tampering with urine samples, which also, in turn, helped explain the words and actions alleged in the specifications under Article 134. (Record of trial at 1014). Those specifications set out that on or about 19 December 1985 the accused did:

wrongfully communicate certain language and gestures to wit: "Are you dirty?", or "Do you need help?", or words to that effect, and by pointing to the water faucet, which language and gestures suggested to Fireman Scott D. Floccher, U.S. Coast Guard, [and Seaman Apprentice John M. Hogan, U.S. Coast Guard] that he commit the offense under the code of wrongfully tampering with his urine sample.

Appellant argues that the testimony concerning what he said to three other individuals was inadmissible because it did not meet the tests of Military Rule of Evidence 404(b). That rule is as follows:

*Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Manual for Courts–Martial, 1984

In *United States v. White*, 23 M.J. 84 (CMA 1986), the Court of Military Appeals set out a three step analysis for the military judge in deciding admissibility under this rule:

First, does the evidence tend to prove that the accused committed prior crimes, wrongs, or acts? *United States v. Brooks*, 22 M.J. 441 (C.M.A.1986). Second, what is the purpose for which the evidence is offered? Third, ... is the "probative value ... substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the members, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence"? Mil.R.Evid. 403.

*United States v. White*, 23 M.J. 84, 86–87 (CMA 1986)

More recently in *United States v. Mirandes–Gonzalez*, 26 M.J. 411 (CMA 1988), the Court of Military Appeals spelled out the standard of proof for establishing such prior crimes, wrongs or acts by applying the U.S. Supreme Court's decision in *Huddleston v. United States*, —— U.S. ——, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988) to our military evidence rule. In *Huddleston, supra,* the Supreme Court said: "The [trial] court simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact ... by a preponderance of the evidence." *Id.* 108 S.Ct. at 1501–2. In other words, after first making the *Huddleston* required determination whether the evidence "is probative of a material issue other than character." *Id.* at 1499, the judge must then "deter-

mine whether there is sufficient evidence for a reasonable court member to believe that the accused in fact committed the extrinsic offense." *United States v. Mirandes–Gonzalez* 26 M.J. at 414. The military judge, although ruling on this matter before the decisions in *Huddleston* and *Mirandes–Gonzalez, supra* were issued, met their requirements in full when he evaluated the government's proferred testimony in this area. In allowing the testimony of three of the four government witnesses, he said:

> Considering all of the witnesses as a whole, with the exception of Murphy who I will not allow to testify as to his conversation with the accused, the evidence they're going to present as to the conversations in the head at the security office obviously are relevant to an issue of trial. There is a nexus in time, place, and circumstance between the offenses charged, and the testimony; and I believe that taken as a whole, the evidence, the strength of it, was plain is clear, and is conclusive, and I do not—the prejudicial impact of the evidence is not [sic] outweighed by its probative value. The court members, again, will be instructed at the appropriate time on the emphasis to be placed on the evidence, but I will allow Mr. Ahn, and Clemmey, and Dingwell to testify as to the conversations that took place in the head. . . .

Record of trial at 1097–98.

Later, the judge instructed the court members as follows:

> Evidence has been received in the form of testimony from Mr. Ahn, Clemmey and Dingwell concerning statements made by the accused during the urinalysis of December, 1985. That evidence may be considered by you for the limited purposes of its tendency, if any, to prove a plan or design of the accused to tamper with or allow others to tamper with their urine samples. You may not consider this evidence for any other purpose, and you may not conclude from this evidence that the accused is a bad person or has

criminal tendency, and he, therefore, committed the offenses charged.

Record of trial at 1966.

We find the judge's ruling admitting this testimony and his instructions to the court members concerning its limited purpose to have been perfectly correct. The testimony clearly was admitted for the purpose of establishing a plan and not as evidence of the accused's bad character. Moreover, the three uncharged incidents, which occurred within the same time frame as the charged offenses, were almost identical with the acts alleged in the specifications. As a result, the problem of dissimilarity, which prompted the Court of Military Appeals to exclude certain uncharged misconduct evidence in the recent case of *United States v. Gamble*, 27 M.J. 298 (CMA 1988) is not present here. Assignment of Error III is deemed to be without merit.

■ In Assignment of Error IV, appellant contends that the military judge erred by not ordering a new Article 32 investigation, because, in appellant's view, the investigating officer abandoned his impartiality. The basis for this assertion was the investigating officer's following verbal admonishment of the counsel who was representing appellant:

> The matter in which you brought that charge to my attention, the remarks concerning, "Are you dirty?", "Do you need help?", what kinds of statements are those, appear to be made in the context of mockery of the charges, the drafter, the government counsel, the investigating officer, and these proceedings, and they were duly noted. Your outburst of disgust to the Investigating Officer when the Investigating Officer has denied your several requests, your histrionics, and most recently references to yourself as the alleged detailed defense counsel, I find offensive to these proceedings. You have cross-examined the Investigating Officer on these charges as though the Investigating Officer had drafted them and was in the position of defending them. You complain of the lack of decorum due to the physical layout. You display your temper when it appears that

you do not get your way. You protest that these are judicial or semi-judicial proceedings, however, your conduct appears to be inconsistent with appropriate behavior of counsel in a court of record, at least where I practiced, and I failed to see how this conduct and zealousness can be a benefit to anybody concerned. Therefore I admonish you. Again, I don't want nor do I need an explanation. I also remind other counsels to refrain from referring to themselves as alleged detailed defense counsel.

Article 32 Investigation Vol. I at 88.

Appellant sees this rebuke as reflecting personal animosity on the part of the investigating officer towards appellant's counsel which prevented an impartial investigation. We disagree.

The Article 32 investigation in this case presented a monumental task for the investigating officer in maintaining order and decorum. He was confronted with fifteen accused and fifteen counsel, who vigorously advanced their varying interests in frequently free wheeling styles. It is clear from the record of that investigation that the officer conducting it, after allowing all counsel considerable latitude in their manner of presentations, finally determined to call a halt to counsel actions which bordered on contemptuous behavior. Appellant's counsel acknowledged that the investigating officer may have had reason to believe he had crossed this line. As a result, when arguing his motion for another investigation to the judge, counsel appears to base his complaint primarily on the fact that he was the only one chastised, not that it was unjustified. In this regard, counsel stated:

And, I don't deny that I was vigorous. I was very vocal. I was very much involved. And, did I cross the line sometimes? That's a matter of debate. That's a matter of opinion ... So, if I crossed the line or not, well, I'm sure, obviously, LCDR Brudzinski thinks that I did. But, still in all, there is a balance to be put into consideration and that bal-

ance was not done. And, I was the only one that was admonished.

Record of trial at 115–16.

Granted, appellant's counsel was the only one rebuked in such a manner, but from our reading of the record his continuing conduct clearly warranted the investigating officer's action. Moreover, we do not see the quoted chiding as reflecting personal animosity at all. The lack of such animosity toward counsel and the accused is reflected in the following answers to voir dire questions propounded to the investigating officer by appellant's counsel after the censure was issued:

I can assure you that the remarks were not directed to you personally. They were directed to your conduct. They had nothing whatsoever to do with the accused, Petty Officer Spinner. I will still conduct this investigation in a fair and impartial manner, ... Counsel, I do not believe that my admonishment of your conduct in any way, shape, or form hints at my prejudice to your client. There is no prejudice.

Article 32 Investigation Vol. I at 89–90.

The investigating officer made these statements despite counsel's reference to himself as a "purported detailed defense counsel" immediately after the recess which followed the censure.

The military judge, in denying appellant's motion for a new investigation based on the investigating officer's lack of impartiality, pointed to that officer's voir dire answers as reflecting no prejudice against appellant. We, too, find the investigating officer's response to voir dire questions persuasive. In addition, throughout the record the investigating officer's conduct reflects his impartiality and lack of bias. The motion for a new investigation was properly denied. Assignment of Error IV is found wanting.

█ Finally, we will address the first error assigned, which challenges the sufficiency of the evidence. Appellant, citing Article 66(c), Uniform Code of Military Justice, 10 U.S.C. § 866(c) and cases from the Court of Military Appeals and the Courts of Military Review, correctly notes a re-

quirement for Courts of Military Review unique among appellate courts, that we may not affirm any finding of guilty unless we are independently convinced of guilt beyond a reasonable doubt.[1] In arguing that such guilt has not been established he says the following:

> The Government's evidence, in all critical aspects, consisted solely of the testimony of Smeland, Watts, Adams, Murphy, Hogan, Belote, West and Floccher. In each case the record reflects the untrustworthiness of the testimony of these individuals. There was evidence of false statements, lying under oath as well as substantial incentives for the individuals to falsely implicate the appellant. Petty Officer Spinner testified under oath as to his innocence concerning all charges and specifications, reinforced by numerous testimonials to his honesty and integrity by witnesses, including several who testified on behalf of the United States. The Government failed to establish any motive for appellant to violate the law since he never received any gain, and did not know or did not care for individuals who allegedly received benefits from his actions. Further, he put an otherwise spotless career in jeopardy and risked his families [sic] security and honor to no purpose.

Defense brief at 5.

While this characterization of the various prosecution witnesses and their testimony may have some basis, counsel for appellant in oral argument correctly conceded that testimony from witnesses of bad character, with motivation to lie, can nevertheless properly convince a court of guilt, even when weighed against testimony proclaiming innocence from an accused of good character. We have carefully reviewed the evidence of record, including appellant's own testimony under oath denying guilt to all the offenses, and have reached our own independent conclusions with respect to credibility.

In so doing, we note that, although there may have been reason for the government witnesses to testify falsely, there was also strong motivation for appellant to lie in order to protect his standing as a petty officer and watch supervisor. If his reporting of a watchstander with a master key amounted to deception, then a subsequent course of denying guilt and pitting his credibility against subordinates with blemished records would be consistent deceiving conduct. In our effort to arrive at the truth, we have had to determine who to believe whenever appellant's testimony of innocence has clashed with that of others. One example of how we have resolved conflicting testimony is worth noting as an illustration of our approach to this problem.

Seaman Apprentice Sean Murphy testified that the appellant had given him a master key in 1985 (Record of trial at 765–66). Later, in the summer of 1986, shortly after the key meeting with watchstanders, Seaman Apprentice Murphy, who missed the meeting because he was on duty at the gate guard shack, confronted appellant and asked him if he denied making the keys at the meeting. When appellant said yes, Seaman Apprentice Murphy testified that:

> At that point I got upset. I told him, "How can you deny making the keys, when I saw you making the ones [and] you gave me a key?" At that point he didn't say—I don't think he said anything. That's when I got—I got pretty upset at that point.

Record of trial at 790.

Appellant confirmed the incident with Seaman Apprentice Murphy as follows: "After the meeting he came in, and confronted me, and accused me of making the master key for him. I denied it, and he started getting angry and upset about it, and I felt I did

---

1. See *United States v. Turner,* 25 M.J. 324 (CMA 1987), where the U.S. Court of Military Appeals said:

   > [U]nder Article 66(c) of the Uniform Code, 10 U.S.C. § 866(c), the Court of Military Review has the duty of determining not only the legal sufficiency of the evidence but also its factual sufficiency ... For factual sufficiency, the test is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, the members of the Court of Military Review are themselves convinced of the accused's guilt beyond a reasonable doubt.
   >
   > *Id.* at 324–25.

not have to defend myself with him about that issue." Record of trial at 1418.

Why a subordinate seaman apprentice would challenge his superior petty officer in such a manner with *false* accusations is not readily apparent. Furthermore, if Murphy's accusations were false, it does not follow, in our view, that appellant would not defend himself. Equally as revealing to us is appellant's forbearance in the face of what amounts to insubordinate conduct, if appellant's claim of innocence is accepted. Inaction under these circumstances just does not comport with our common experience and general knowledge of human nature. Murphy's described response upon hearing of appellant's public disclaimer of wrongful conduct has the ring of truth. Appellant's stated reaction to Murphy does not. Similarly, throughout the record, we find the testimony of prosecution witnesses believable and appellant's protestations of innocence lacking credence. We are convinced beyond a reasonable doubt from all the evidence that appellant is guilty of all offenses. The remaining Assignment of Error is, therefore, rejected.

In fulfilling our Article 66, Uniform Code of Military Justice responsibilities, we have considered all the matters of record, including those asserted here and at trial in appellant's behalf, and, as indicated, are convinced of appellant's guilt. In addition, after weighing all aspects of this case, we are unable to say that the sentence of twelve months confinement, forfeiture of $500.00 per month for six months and reduction to pay grade E–1 is inappropriately severe in any respect for this accused and the offenses of which he has been found guilty. The findings and sentence are determined to be correct in law and fact and on the basis of the entire record should be approved. Accordingly, the findings of guilty and sentence, as approved below, are affirmed.

Judges BARRY and GRACE concur.