**UNITED STATES**

v.

**Master Sergeant Napolean BAILEY,
United States Air Force.**

**ACM 32898.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 25 May 1997.

Decided 16 Dec. 1999.

2. Senior Judge Senander participated on this case prior to his retirement.

Appellate Counsel for Appellant: Frank J. Spinner (argued), Colonel Douglas H. Kohrt, and Captain Tishlyn E. Taylor.

Appellate Counsel for the United States: *Captain Tony R. Roberts* (argued), Colonel Anthony P. Dattilo, Lieutenant Colonel Ronald A. Rodgers, and Captain Steven D. Dubriske.

Before YOUNG, Senior Judge, SPISAK, Senior Judge, and WILCOX, Appellate Military Judge.

## OPINION OF THE COURT

SPISAK, Senior Judge:

Our original opinion in this case was unpublished. That opinion is hereby withdrawn.

On 25 May 1997, a general court-martial consisting of officer and enlisted members, convicted the appellant of rape, sodomy, aggravated assault, battery, making a false statement, kidnapping, communicating threats, obstructing justice, disorderly conduct, and unlawful entry, in violation of Articles 120, 125, 128, 107, and 134, UCMJ, 10 U.S.C. §§ 920, 925, 928, 907, 934. His approved sentence consists of a dishonorable discharge, confinement for 30 years, reduction to airman basic, forfeiture of all pay and allowances, and a reprimand.

The appellant asserts seven errors for our consideration. First he complains that Military Rule of Evidence (Mil.R.Evid.) 413 is unconstitutional, both on its face and as applied to his case, because it violates the Due Process Clause of the United States Consti-

tution. Next, he contends that Mil.R.Evid. 413 is unconstitutional, as applied to him, because its application denied him the equal protection of the law. Third, he argues that the military judge abused his discretion by improperly applying Mil.R.Evid. 403. Fourth, he alleges that the military judge abused his discretion by admitting certain evidence under Mil.R.Evid. 404. Fifth, he contends that the evidence was both factually and legally insufficient to support findings of guilty of rape, forcible sodomy and assault of JJ; forcible sodomy of LF; assault of LF; making false statements; communicating a threat to LF; and, obstruction of justice. Sixth, he contends that the disorderly conduct specification failed to state an offense because it did not include "essential acts." Finally, he asserts that his sentence to confinement for 30 years is inappropriately severe. Finding no error, we affirm.

## I. THE CONSTITUTIONALITY OF RULE 413

The appellant, recognizing that we resolved his first two asserted errors in *United States v. Wright,* 48 M.J. 896 (A.F.Ct.Crim. App.1998), asks that we reconsider that decision. Relying only on two law review articles, which he incorrectly assumes we failed to consider in deciding *Wright,* the appellant argues that we erred and should now correct that error by declaring Mil.R.Evid. 413 unconstitutional.

In support of his equal protection argument, the appellant makes one argument that was not raised in *Wright.* He contends that because Mil.R.Evid. 412 protects the prior sexual history of a victim from disclosure, while "the comparable sexual history of a charged sex offender is exploited under Mil. R.Evid. 413," offenders are being treated differently in violation of their right to equal protection of the laws. In order to win such an argument, however, the appellant must first demonstrate that victims and offenders are similarly situated and, therefore, entitled to similar treatment under the law. This he has not done. We, in turn, decline to revisit this and the appellant's other constitutional challenges to Mil.R.Evid. 413. We will, however, consider whether or not the challenged evidence was properly admitted.

## II. APPLICATION OF MIL.R.EVID. 403

Before admitting evidence under Rule 413, the military judge in this case conducted a balancing under Rule 403. The appellant contends that the balancing was inadequate because the military judge did not use the criteria set forth by the Tenth Circuit in *United States v. Enjady,* 134 F.3d 1427 (10th Cir.1998). He also complains that the military judge's explanation of how he balanced the competing interests of probative value and prejudice were "cryptic" and "unhelpful." Again, we disagree with the appellant's contentions.

In *United States v. Dewrell,* 52 MJ 601 (A.F.Ct.Crim.App.1999), Chief Judge Snyder concluded that relevancy of prior sex offenses offered under Mil.R.Evid. 413 is all but mandated, but admissibility of that evidence must still be balanced against its prejudicial effect in accordance with Mil.R.Evid. 403. After reaching these conclusions, Chief Judge Snyder established guidelines for military judges to use when applying the Rule 403 balancing test to Rule 413 and 414 evidence. He said that:

> the military judge will test for whether the prior acts evidence will have a substantial tendency to cause the members to fail to hold the prosecution to its burden of proof beyond a reasonable doubt with respect to the charged offenses. It is only when the prior acts evidence is deemed to meet this test that its prejudicial value will be deemed to *substantially* outweigh the probative value of the prior acts evidence in issue.

*Dewrell,* 52 M.J. at 609 (citations omitted). *Accord Wright,* 48 M.J. at 899, n. 1. (the military judge must recognize that there is a presumption in favor of admissibility of Rule 413 evidence.)

Chief Judge Snyder then set forth the *primary* factors for the military judge to consider when performing the balancing test.

1) Whether the evidence will contribute to the members arriving at a verdict on an improper basis;

2) The potential for the prior acts evidence to cause the members to be distracted from the charged offenses; and,

3) How time consuming it will be to prove the prior acts.

*Dewrell,* 52 M.J. at 609 (citations omitted).

■ He further instructed that to determine the probative value of the evidence, the military judge should assess the similarities between the prior acts and the charged offenses and the clarity of the witness' recall of those prior acts. The more clear and firm the witness' recall, and the more apparent the impact of the alleged prior acts on the witness, the greater the probative value. Even remoteness may be offset by the apparent reliability of the witness. *Id.* We now apply these principles to the instant case.

■ At the time of trial, Judge Pope did not have the benefit of our guidance in *Dewrell.* Nevertheless, he took great pains to find some criteria for balancing the obviously prejudicial impact of the proffered evidence against its equally obvious probative value. Judge Pope chose to apply the criteria recommended by the Judicial Conference for evaluating the admissibility of Rule 413 evidence. *See* Report of the Judicial Conference of the United States on the Admission of Character Evidence in Certain Sexual Misconduct Cases, 159 F.R.D. 51, 52 (1995), *reprinted in* 1 Federal Rules at 678–83.

The factors Judge Pope considered were: (1) proximity in time to the charged event of the matters being offered; (2) similarity to the charged event; (3) rate of frequency of the other acts; (4) surrounding circumstances; (5) relative intervening events; and (6) relevant similarities or differences between the prior acts and charged offenses. Judge Pope's words and actions during the trial made clear his intent to "prevent the misuse of this information by the panel." Not only did he decline to admit some of the proffered evidence, he also limited how and to what extent the government could present other parts of that evidence. Therefore, we conclude that Judge Pope found that the evidence would not tend to distract the members, be too time consuming, or cause them to convict the appellant on an improper basis.

His findings instructions further highlight Judge Pope's efforts to prevent misuse of the challenged evidence:

You have heard the testimony of Ms. [UW] and Ms. [DE] concerning allegations of nonconsensual anal intercourse. The accused is not charged with any offenses involving these women. This evidence should have no bearing on your deliberations unless you determine that these events occurred. If you make that determination, you may consider the evidence for its bearing on any matter to which it is relevant in relation to the rape and forcible sodomy charges. It has no bearing on any of the other charged offenses. You may not use this evidence as a substitute for evidence that the accused actually committed the crimes for which he stands charged. In other words, you cannot use this evidence to fill in any gaps in the government's case, if you perceive any to exist, as the accused may be convicted of an offense only if you are satisfied the government has proved every element of each offense beyond a reasonable doubt. However, you may consider this evidence when determining whether the government has met its burden of proving the rape and forcible sodomy charges beyond a reasonable doubt and to rebut the mistake of fact defense. You may not consider this evidence for the general proposition that the accused is a bad person and therefore committed these charged offenses.

R. 598.

This final comment in Judge Pope's instruction was erroneous because Congress intended that such evidence be used to demonstrate propensity to commit sex offenses. However, the members were told not to use the evidence in the very way that the appellant now contends would be unconstitutional. Court members "are presumed to follow the military judge's instructions." *United States v. Holt,* 33 M.J. 400, 408 (C.M.A.1991). Therefore, the error inured to the benefit of the accused.

We find that Judge Pope properly admitted the testimony of Ms. UW and Ms. DE

under the provisions of Mil.R.Evid. 413 and that his balancing was not only adequate, it was exemplary.

## III. THE ADMISSIBILITY OF EVIDENCE UNDER RULE 404(b)

■ The appellant also complains that the military judge erroneously admitted testimony concerning other abusive relationships from the appellant's past. The military judge limited this evidence to assaultive behavior by the appellant and evidence of his attempts to control the witnesses during their relationships. He excluded evidence of threats to kill and other allegations that he deemed too prejudicial to the appellant.

Determinations of admissibility of uncharged misconduct under Mil.R.Evid. 404(b) are made by application of the three-pronged test set forth by our superior court in *United States v. White*, 23 M.J. 84 (C.M.A.1986). First, the military judge must determine whether the evidence tends to prove that the appellant committed the uncharged acts. The standard for admission is quite low. *United States v. Dorsey*, 38 M.J. 244, 246 (C.M.A.1993). To meet this prong the military judge must determine that there is sufficient evidence for a reasonable court member to believe that the accused committed the uncharged offense. *United States v. Mirandes–Gonzalez*, 26 M.J. 411, 414 (C.M.A. 1988).

Second, the military judge must analyze the purpose for which the evidence is offered. The court further explained in *United States v. Reynolds*, 29 M.J. 105, 109 (C.M.A.1989), that this second prong requires the military judge to determine whether the uncharged misconduct makes any fact in a charged offense more or less probable.

The third and final prong of the *White/Reynolds* test requires the military judge to weigh the probative value of the evidence against any danger of unfair prejudice to the accused, the likelihood of confusing the issues or misleading the factfinder, and against considerations of undue delay, waste of time, or needless presentation of cumulative evidence. *White*, 23 M.J. at 86–87.

■ The military judge in this case very carefully and thoroughly applied all of these tests. As a result, he determined that much of the evidence identified in the government's notices to the appellant did not constitute uncharged misconduct, but could be used as proof of the charged offenses. Other proposed testimony he found to be unduly prejudicial or likely to confuse the members. In those cases, he either excluded the proffered testimony completely or severely limited what the government could present.

In an attempt to defend his claim that the military judge improperly applied Rule 404(b), the appellant contends that the military judge did not properly instruct the members in compliance with *United States v. Diaz*, 39 M.J. 1114 (A.F.C.M.R.1994). In *Diaz*, which was decided four years before Mil.R.Evid. 413 became effective, we said that evidence of one rape is admissible in the trial of another rape when the accused has raised a mistake of fact defense, or when the two rapes were so "significantly similar" that they show *modus operandi* or plan. However, admission of evidence of prior sexual offenses is now specifically authorized under Rule 413. Therefore, when, as here, evidence is admitted under Mil.R.Evid. 413, the limitations set forth in *Diaz* no longer need be included in instructions to the court members. Here, only evidence of assault, threats, and other coercive actions were admitted under Rule 404(b). The military judge properly instructed the members on the use of the uncharged misconduct evidence and no error to the prejudice of the appellant occurred.

## IV. FACTUAL AND LEGAL SUFFICIENCY

■ The appellant challenges the sufficiency of the evidence to support some part of each charge on which he was convicted. Article 66(c), UCMJ, 10 U.S.C. § 866(c), requires that we approve only those findings of guilty that we determine to be correct in both law and fact. The test for legal sufficiency is whether, when the evidence is viewed in the light most favorable to the government, a reasonable factfinder could have found the appellant guilty of all ele-

ments of the offense, beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324, 324 (C.M.A.1987) (citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)); *United States v. Ladell*, 30 M.J. 672, 673 (A.F.C.M.R.1990). The test for factual sufficiency is whether, after weighing the evidence and making allowances for not having observed the witness, we are convinced of the appellant's guilt beyond a reasonable doubt. *Turner*, 25 M.J. at 325.

A. Rape, Sodomy, and Assault of JJ:

■ JJ testified that on 5 September 1996, she went to the appellant's apartment to break off her relationship with him. JJ also testified that during that visit, the appellant squeezed her head between his hands, bit her neck, had sexual intercourse with her without her consent, and sodomized her. The appellant contends that this testimony is insufficient to support his conviction because (1) JJ had a motive to misrepresent because she had a new boyfriend; (2) there was no corroborating evidence; (3) her descriptions of the attack were inconsistent; and, (4) there were logical inconsistencies in her description of what happened.

We do not find it surprising that details of a traumatic assault may be difficult for a victim to relate or that she may relate them somewhat differently from one interview to the next. We are also unimpressed with the appellant's contention that JJ had a motive to fabricate her account because she was beginning a new relationship. In fact, her "new" relationship predated her liaison with the appellant and continued, on and off, during that relationship. Finally, while JJ did not immediately report to the police or seek medical assistance, she was examined the next day and there was evidence of a bite mark on her neck. Moreover, the appellant told police investigators that he had anal intercourse with JJ on 5 September 1996, that she said stop, and that he did stop after about five minutes. Such evidence belies the appellant's contention that there was no corroborating evidence of these offenses.

B. Forcible Sodomy, Assault and Kidnapping of LF:

■ LF testified that she and the appellant had a long and tumultuous relationship during which the appellant repeatedly assaulted and threatened her. On one occasion, during consensual vaginal intercourse, the appellant pulled her to the bottom of the bed and, ignoring her pleas and protestations, anally sodomized her. On another occasion as she and the appellant were driving to a nightclub, LF and the appellant began to argue. The appellant pulled his truck into a parking lot, LF jumped out and started walking home. The appellant shifted into reverse gear and aimed the truck at her. LF jumped aside and began running in the other direction. The appellant pursued her in the truck for some distance then stopped, jumped out of the truck, grabbed LF, carried her back to the vehicle, and threw her into the truck. The appellant then drove to an isolated park where the argument began again. Some time later, the appellant drove LF back home.

Again the appellant contends that the witness was unbelievable, in part because of the volatile nature of their relationship and her participation in many heated arguments with the appellant. The appellant places special emphasis on the fact that the members acquitted him of raping LF, thus indicating that they did not believe her testimony. However, members are not required or even expected to believe every word of testimony from a witness. Moreover, the appellant presented a mistake of fact defense concerning his belief that LF consented to sexual intercourse with him. Therefore, neither the appellant nor we can tell if the members disbelieved LF or merely gave the appellant the benefit of the doubt with regard to the rape. In either case, an acquittal on one charge does not cast doubt on other findings of guilty. *United States v. Powell*, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984).

Further, the government called some seven other witnesses, each of whom corroborated parts of LF's testimony. While none was an eyewitness to the sodomy, assault, or kidnapping charges, each provided evidence which enhanced LF's credibility. Therefore, when taken in context with the remainder of LF's testimony about threats, assaults, and

violent outbreaks from the appellant, her testimony about these specific incidents is quite credible.

The appellant also contends that his conviction for kidnapping cannot stand because LF was not held involuntarily. This assertion is simply not supported by the record. LF testified that when she got out of the truck it was because she no longer wanted to be with the appellant and that she did not go willingly when he grabbed and carried her back to the vehicle. The appellant points out that LF did not tell the appellant that she wanted to go home and did not try to get out of the truck a second time. For these reasons, the appellant contends that her testimony "strains credulity" and indicates that she was not held against her will. However, as already noted, LF's testimony about prior abuses more than adequately explains a lack of resistance. Moreover, we know of no rule of law, nor has the appellant cited any authority, that requires a kidnap victim to tell her captor that she wants to go home.

The appellant is correct in his assertion that it is the involuntariness of the seizure and detention that is the essence of kidnapping. *See Chatwin v. United States*, 326 U.S. 455, 66 S.Ct. 233, 90 L.Ed. 198 (1946). However, once the appellant carried the unwilling LF back to his truck, the offense of kidnapping was complete. Except for sentencing considerations, the duration of the restraint is not germane.

## C. False Official Statement:

 During the course of their investigation Air Force Office of Special Investigations (AFOSI) agents asked the appellant if he had any weapons in his apartment. While he admitted owning some firearms, the appellant denied that they were then in his apartment. When the agents went to the apartment to conduct a search, the appellant admitted that he had guns inside.

The appellant now contends that he had no intent to pervert a government function and, therefore, cannot be held liable for making a false official statement. In support of this argument, the appellant relies on *United States v. Turner*, 35 M.J. 787 (A.C.M.R.1992). Turner had falsified a bill of sale for a video

cassette recorder which he had given to a fellow soldier. Although he had made a gift of the recorder, Turner created the bill of sale to indicate that he had been paid $75.00. His purpose was to avoid further investigation into his black-marketing activities. The Army Court found that there was no "perversion of a governmental official function" as required by Article 107, UCMJ. *Turner*, 35 M.J. at 789.

Here, there was a clear governmental official function under way when the AFOSI agents asked about the location of the appellant's weapons. The agents had evidence that the appellant had threatened some of his victims with guns and they needed to know the location of those weapons before they entered his apartment to conduct a search. Equally clear is the fact that the appellant attempted to deceive the agents until it became clear that they were about to search his apartment and would undoubtedly find the guns. As our superior court has said,

> [E]ven if not subject to an independent "duty to account," a servicemember who lies to a law-enforcement agent conducting an investigation as part of his duties has violated Article 107.

*United States v. Jackson*, 26 M.J. 377, 379 (C.M.A.1988).

## D. Communicating a Threat to LF:

 The appellant once again argues that LF was not a credible witness and her testimony alone cannot support his conviction on this charge. We resolved that issue adversely to the appellant above. His second contention is that he made no threat, but merely expressed his frustration with LF. Therefore, he claims, because there was no threat, the evidence is *legally* insufficient to support his conviction.

LF testified that after she attempted to end their relationship, the appellant came to her house to get his things. She was in the kitchen washing dishes and not responding to the appellant who became angry, hit her in the head with a metal cooking pot, grabbed her by the throat and lifted her off the floor. He held her against a wall with one hand, pulled his other fist back as if to hit her, and

**794**

said that he could punch her nose into her brains and kill her. The appellant then punched the wall next to LF's head and let her go.

■■■■ The accused need not actually intend to commit the threatened harm for a threat to be proven. However, if the circumstances reveal that the "threat" was made in jest or for some legitimate purpose, it does not constitute a threat. *Manual for Courts–Martial, United States (MCM)*, Part IV, ¶ 110(c) (1995 ed.). The appellant's acts here showed neither any jest nor legitimate purpose. Rather, striking the wall emphasized his power and control over his victim, and his words were designed to place LF in fear of what he could and likely would do in the future if she did not acquiesce to his will.

We are satisfied that the evidence was sufficient to permit a reasonable factfinder to convict the appellant of threatening LF.

**E. Obstruction of Justice:**

■■■■ The appellant contends that because he was acquitted of raping LF, he cannot be convicted of obstruction of justice by asking LF to recant her claim that she had been raped. He also argues that her testimony is inconsistent and unreliable concerning the appellant's attempts to get her to recant her claim that he assaulted her on another occasion. We have already adequately addressed LF's credibility. As to the appellant's contention that he cannot be convicted of obstructing justice in relation to a charge of which he was acquitted, we know of no such legal principle.

A finding of guilty on a charge of obstruction of justice is dependent on proof beyond a reasonable doubt that:

1) The accused wrongfully did a certain act;

2) That he did so in the case of a certain person against whom he had reason to believe there were or would be criminal proceedings pending;

3) That the act was done with the intent to influence, impede, or otherwise obstruct the due administration of justice; and

4) The conduct was to the prejudice of good order and discipline or of a nature to bring discredit upon the armed forces.

*MCM*, Part IV, ¶ 96(b). Nowhere in these elements is there a requirement that the offense for which the person is under investigation be proven or that the accused even face charges for that offense. The offense of obstruction of justice is complete when the accused does some act with the intent to impede or obstruct justice. The appellant's contention here is without any legal support or even logic.

**F. Conclusion:**

Having carefully reviewed the record of trial, considered each of the appellant's arguments on factual and legal sufficiency of the evidence, we are satisfied that, when the evidence is viewed in the light most favorable to the government, a reasonable factfinder could have found the appellant guilty of all elements of the offenses, beyond a reasonable doubt. We are also ourselves convinced of the appellant's guilt beyond a reasonable doubt.

**V. DISORDERLY CONDUCT**

The appellant next contends, for the first time on appeal, that the disorderly conduct specification of Charge V fails to state an offense. He contends that because there are no essential acts identified within the specification, he cannot be found guilty of this charge. The specification alleges that the appellant "was, at or near Spokane, Washington, between on or about 1 July 1996 and on or about 15 August 1996, disorderly, which conduct was of a nature to bring discredit upon the armed forces."

■■■■ The military is a notice pleading jurisdiction. *See United States v. Sell,* 11 C.M.R. 202, 206, 1953 WL 2005 (C.M.A.1953); *United States v. Calamita,* 48 M.J. 917, 920 n. 1 (A.F.Ct.Crim.App.1998), *pet. denied,* 51 M.J. 372 (1999). We have followed "the modern tendency ... toward allowing the pleading of legal conclusions and the elimination of detailed factual allegations from counts charging misconduct." *United States v. Williams,* 31 C.M.R. 269, 271, 1962 WL 4409 (C.M.A.1962).

In the military, a specification is sufficient if it alleges each element of the charged offense expressly or by necessary implication. No set form is required. R.C.M. 307(c)(3). Our senior court has established a three-pronged test for determining whether or not a specification states an offense. The specification must provide "(1) the essential elements of the offense, (2) notice of the charge, and (3) protection against double jeopardy." *United States v. Dear,* 40 M.J. 196, 197 (C.M.A.1994).

When a specification is challenged at trial, it will be viewed more critically on appeal than if the challenge is raised for the first time on appellate review. *United States v. French,* 31 M.J. 57, 59 (C.M.A.1990); *United States v. Bryant,* 30 M.J. 72, 73 (C.M.A. 1990). The question is whether the specification is so defective that it "cannot within reason be construed to charge a crime." *United States v. Watkins,* 21 M.J. 208, 210 (C.M.A.1986).

The elements of disorderly conduct are that (1) the accused was disorderly; and (2) his conduct was to the prejudice of good order and discipline **or** of a nature to bring discredit upon the armed forces. Both elements were set forth in the specification. Therefore, the question posed by *Watkins* has been answered in the affirmative as has the first question in the *Dear* analysis. Because the appellant did not object at trial, did not move to make the specification more definite and certain, and did not seek a bill of particulars, we can reasonably assume that he had adequate notice to defend the charge. Moreover, there is no danger that the appellant will be placed in double jeopardy because the record will protect him from further prosecution for the same conduct. Thus, all three prongs of the *Dear* test have been met. Under such circumstances, we will not reverse on the basis of defects in the specifications. *Watkins,* 21 M.J. 208.

## VI. SENTENCE SEVERITY

Article 66(c), UCMJ, 10 U.S.C. § 866(c), requires that we approve only so much of the sentence as we find "should be approved." In determining sentence appropriateness, we must exercise our judicial powers to assure that justice is done and that the accused gets the punishment he deserves. Performing this function does not authorize this Court to exercise clemency. *United States v. Healy,* 26 M.J. 394, 395–96 (C.M.A. 1988). The primary manner in which we discharge this responsibility is to give individualized consideration to an appellant, including the nature and seriousness of the offenses and the character of the appellant's service. *United States v. Snelling,* 14 M.J. 267, 268 (C.M.A.1982). Applying this standard, we do not find that the appellant's sentence, which includes confinement for 30 years, is inappropriately severe. Article 66(c). Rather, we find that the sentence is both justified and appropriate considering the appellant's numerous violent acts, including rape, sodomy, kidnapping, and assault on three separate victims; his repeated attempts to interfere with the investigation of those offenses; and, his false statement to investigators.

The findings are correct in law and fact, and no error prejudicial to the substantial rights of the accused occurred. Accordingly, the findings and sentence are

AFFIRMED.

Senior Judge YOUNG and Judge WILCOX concur.