UNITED STATES, Appellee,

v.

Dirk J. THOMPSON, Senior Airman,
U.S. Air Force, Appellant.

No. 98–0594.
Crim.App. No. 32630.

U.S. Court of Appeals for
the Armed Forces.

Argued Dec. 17, 1998.

Decided Sept. 17, 1999.

SULLIVAN, J., delivered the opinion of the Court, in which COX, C.J., and CRAW-FORD, GIERKE, and EFFRON, JJ., joined.

For Appellant: *Captain Stephen P. Kelly* (argued); *Colonel Douglas H. Kohrt, Lieutenant Colonel Ray T. Blank, Jr.,* and *Captain Patience E. Schermer* (on brief); *Captain W. Craig Mullen.*

For Appellee: *Major Bryan T. Wheeler* (argued); *Lieutenant Colonel Anthony P. Dattilo, Major Ronald A. Rodgers,* and *Captain Tony R. Roberts* (on brief); *Lieutenant Colonel Michael J. Breslin* and *Major Steven B. Thompson.*

Judge SULLIVAN delivered the opinion of the Court.

On December 17, 1996, appellant was tried by a military judge sitting alone as a general court-martial at Mountain Home Air Force Base, Idaho. In accordance with his pleas, he was found guilty of committing forcible sodomy against a child under the age of 16, in violation of Article 125, Uniform Code of Military Justice, 10 USC § 925. *See* para. 51b and d(2), Part IV, Manual for Courts-Martial, United States (1995 ed.). He was sentenced to a dishonorable discharge, confinement for 48 months, total forfeitures, and reduction to E–1. On March 25, 1997, in accordance with the terms of appellant's pretrial agreement, the convening authority reduced the term of confinement to 30 months but otherwise approved the sentence. On February 5, 1998, the Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion.

This Court granted review on July 20, 1998, on the following issue assigned by appellant:

> WHETHER APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL BY TRIAL DEFENSE COUNSEL'S INADEQUATE PRETRIAL ADVICE AND CONFLICT OF INTEREST.

We hold that a pretrial complaint against defense counsel, made by appellant's wife, did not create a conflict of interest disqualifying him from further participation in this case. *See United States v. Cornelious,* 41 MJ 397 (1995). We also hold that appellant was not denied effective assistance of counsel when military defense counsel cautioned him about retaining civilian counsel and discouraged him from getting help from a psychologist. *See United States v. Montoya,* 13 MJ 268, 275 n. 3 (CMA 1982); *United States v. Mansfield,* 38 MJ 415, 418 (CMA 1993).

Appellant pleaded guilty to committing forcible sodomy against a child under the age of 16 and he now challenges the effectiveness of his defense counsel. In a post-trial affidavit (dated Sept. 29, 1997), appellant states:

> When I sought information regarding the availability of civilian defense counsel he [trial defense counsel] advised me not to seek a civilian defense counsel by telling me that he had seen three or four cases in which Airman [sic] had fired their civilian defense counsel because they did not know the military system. Because of his advice I felt I had no other option than to continue with Captain Santa Teresa. Because of my concern with the way Captain Santa Teresa was handling my case, my wife

complained to the IG on or about the 7th of December 1996. Captain Santa Teresa then chewed me out for going to the IG. Although he stated that I could fire him, because of his earlier advice I felt I had no option. Then also when my chaplain, that I have been talking to, advised me to seek the help of a psychologist my attorney said that was a bad idea and told me we won't do that. That is funny cause [sic] the first thing I did when I got to Miramar was see a psychologist.

In response, defense counsel filed a sworn affidavit indicating that he did not prohibit appellant from seeking civilian counsel. Rather, he asserted that he "fully explained his rights to counsel on numerous occasions." In his affidavit, he states that on November 5, 1996,

> I remember AB Thompson making a disappointing side comment about having to pay a civilian attorney when I was advising him about his rights. He asked for my opinion about civilian attorneys. I told him that based on my experience, most civilian attorneys I have encountered do not know how the military justice system works. However, some are very good. This is when I told him that if he was going to hire a civilian attorney he should make sure that he finds someone who has a lot of military justice experience and knows how the UCMJ works. I told him to let me know if he was going to hire one. A few days passed and I asked him whether he wanted to hire a civilian attorney and he stated he did not and was satisfied with me as his counsel.

Defense counsel further attests to advising appellant of his rights again on December 5, 1996, and submits an undated "Pretrial Advisement of Rights" memorandum signed by appellant prior to preferral of charges. In addition, he submitted a form signed by appellant on December 5, 1996, specifically requesting Captain Santa Teresa as counsel and acknowledging his option of hiring civilian counsel.

Finally, in his affidavit, defense counsel addresses his actions on December 15, 1996, when he was informed about a complaint regarding his representation of appellant:

> ... I received a message from MSgt Bruce Palmer, the IG, NCOIC, to contact him. When I called, MSgt Palmer informed me that "Thompson" made a complaint against me. He did not tell me all the specifics. He just wanted to give me a "heads up." At that time I did not know what it was all about and I was shocked, because AB Thompson left the office appearing satisfied and knowledgeable about the whole process. Based upon the conversation with MSgt Palmer, I assumed that AB Thompson was the one who made the complaint....

> ... AB Thompson arrived that afternoon. I asked him direct and pointed questions about the IG complaint. I told him I thought he was comfortable with and understood the entire process. I told him if he was not satisfied with the process, including my representation to let me know now and not wait until the trial. He was correct when he claimed I told him that he could fire me if he was not satisfied. I also told him if he did not want to plead guilty, we would proceed with a litigated trial; and if he was not satisfied with me to let me know, because I had to call my CCDC to find another attorney for him or he could hire a civilian attorney. I told him we could ask for a delay if he decided to fire me and get another attorney. *He responded by denying having anything to do with the IG complaint. He apparently did not know his wife made the complaint. He also maintained he was satisfied with me as his counsel.* I told him to make sure of it because I did not want any surprises. If he had any problems whatsoever, he should let me know at that time. He insisted he was satisfied with everything. I then informed my chain of command about the situation and they saw no problem. The next day, I again questioned him about having second thoughts. He said he had no questions and no problems.

\*　　\*　　\*

On or about 2 Jan 97, I learned the civilian counsel AB Thompson hired was planning to "attack" me in his post-trial matters. After receiving advice from Maj (then Capt) Doug Cox, Maj Townsend, and my CCDC, I called AB Thompson at his confinement facility. I told him I learned that his civilian counsel was planing to attack me in his post-trial matters. I informed him if that was his approach, then I would be conflicted out and could no longer represent him. I told him if he thinks it would do him good to attack me, that was fine. I told him I would hold nothing against him and that was an option. He gave me a sigh of relief. He told me I did not know how much that meant to him for me to say that. He said he had problems attacking me and he really did not want to do it. I told him he had to do what is best for him and I would not take it personally. However, if he was going to attack me then it was best he released me. He agreed. Before we ended our conversation, he thanked me for everything I had done for him, including getting a deferment of his forfeitures and arranging for his household goods and his family to be moved within two weeks after the trial.

*Finally, regarding his complaint about seeking psychological help, I do not recall dissuading him from seeing a psychologist. I remember him being distraught and informed him I was not a counselor. However, I advised him to talk with a priest or a chaplain, because of the penitent-priest privilege. I informed him there would be no confidentiality with mental health. It has been my habit to inform my clients they could talk to anybody, but I recommend they talk only to my paralegal, a chaplain, or me about the case, because of confidentiality. I never prohibited a client from speaking to or seeking help from someone other than myself, my defense paralegal, or chaplain; however, I always warned them of the possible consequences.*

(Emphasis added.)

The record of trial states the following:

MJ: Now, at this time I'd like to go over your rights to counsel. I'm sure you've already had them explained to you but it's important that we go over them on the record. You have the right to be represented by Captain Santa Teresa—I assume, your detailed counsel. Is that correct Captain Santa Teresa?

DC: Yes, your honor.

MJ: He is your detailed military counsel. He's provided to you at no expense to you. You also have the right to request a different military lawyer to represent you. If the person you request is reasonably available, he or she would be appointed to represent you free of charge. . . .

ACC: Yes, your honor.

MJ: *In addition, you have the right to be represented by a civilian lawyer.* A civilian lawyer would have to be provided by you at no expense to the Government. If you are represented by a civilian lawyer, you can also keep your military lawyer on the case to assist your civilian lawyer or you could excuse your military lawyer and be represented only by your civilian lawyer. *Do you understand your rights to counsel?*

ACC: *Yes, your honor.*

MJ: *Do you have any questions at all?*

ACC: *No, sir.*

(Emphasis added.)

———

Appellant initially asks this Court to set aside his guilty pleas because his military defense counsel had a disqualifying conflict of interest which prejudiced his defense. He contends that his wife's complaint to a local Inspector General and his subsequent confrontation with defense counsel created a conflict of interest. This conflict, he further asserts, resulted in defense counsel conducting no pretrial investigation, calling no witnesses, and pleading him guilty, *i.e.*, taking "the path of least resistance resolving Appellant's case." In sum, he contends that "Capt ST advanced his own interests in getting rid of Appellant easily and quickly ahead of Appellant's interests." Final Brief at 6.

To prevail on a conflict–of–interest claim, appellant must demonstrate that defense counsel faced an "actual conflict of

interest" which "affected the adequacy of [the attorney's] representation." *United States v. Bruce*, 89 F.3d 886, 893 (D.C.Cir. 1996), quoting *Cuyler v. Sullivan*, 446 U.S. 335, 349–50, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). An accused's complaint about counsel's performance may in certain circumstances create such a conflict of interest. *See United States v. Lindsey*, 48 MJ 93 (1998) (three separate opinions). However, if such a complaint is resolved by the accused and his counsel, defense counsel is freed from the competing interests which constitute the conflict. *See United States v. Cornelious*, 41 MJ 397, 398–99 (1995); *see also United States v. Carter*, 40 MJ 102 (CMA 1994); *United States v. Green*, 44 MJ 93 (1996) (absence of knowledge of complaint renders possible conflict not disqualifying).

■ For example, in *Cornelious*, defense counsel became aware that his client made an ineffectiveness complaint in his clemency submission. However, there was nothing in the authenticated record or in post-trial affidavits showing any advisement to the accused of his legal rights, or any resolution between the accused and counsel of this dispute. We remanded *Cornelious* for further proceedings to determine those issues.

Here, defense counsel's affidavit provides additional details concerning a possible conflict of interest which are not contradicted by appellant. *Cf. United States v. Ginn*, 47 MJ 236, 245 (1997). He asserts that once he became aware of a possible conflict, he confronted appellant and quickly ascertained its status. He states that he inquired as to the source of dissatisfaction and discovered that appellant did not make the complaint, but that his wife did so without his knowledge. He further determined that appellant was satisfied with the quality of his representation. Thus, while the pretrial complaint against counsel raised a potential conflict, defense counsel's prompt action rendered him "mentally free from competing interests" and, thus, avoided an actual conflict. *Cf. Carter, supra* at 105; *United States v. Cornelious, supra*. Contrary to appellant's suggestion, his wife's pretrial complaint simply did not create an irrevocable conflict of inter-

est for defense counsel. *See generally United States v. Bruce, supra.*

■ Appellant's second claim of ineffective assistance of counsel is that his military defense counsel improperly discouraged him from retaining civilian counsel. *See* Art. 38(b)(2), UCMJ, 10 USC § 838(b)(2). The test for ineffective assistance of counsel generally requires appellant to demonstrate that counsel's performance was deficient and that the deficiency prejudiced the defense to such an extent that appellant was denied a fair trial. *United States v. Marshall*, 45 MJ 268, 270 (1996). None of the affidavits in this case assert such advice was expressly given by defense counsel, and his affidavit provides additional, uncontradicted details as to the totality of his advice. *Cf. United States v. Ginn, supra.* Moreover, no legal authority is cited that the entire advice as delineated by defense counsel was deficient. *Cf. Montoya*, 13 MJ at 275 n. 3 (military defense counsel can make recommendations on qualified civilian counsel). Lastly, we note that the trial judge fully advised appellant of his right to civilian counsel, and appellant acknowledged this advice and his understanding of it without reservation. We find no prejudicial error here.

■ Finally, appellant contends that his military defense counsel provided him ineffective assistance when he "told him not to seek help from mental health professionals." Final Brief at 2. In a post-trial declaration, he stated:

> Then also when my chaplain, that I have been talking to, advised me to seek the help of a psychologist my attorney said that was a bad idea and told me we won't do that. That is funny cause [sic] the first thing I did when I got to Miramar was see a psychologist.

A similar claim, but not identical, was made by a civilian attorney hired by appellant after his trial for purposes of the post-trial review by the convening authority. He asserted that military defense counsel provided ineffective assistance by "fail[ing] to seek a psychiatric evaluation of [appellant]." Based on a post-trial mental health evaluation acquired by the defense, he contended that the con-

vening authority should give appellant sentence relief because "the Trial Judge imposed a sentence that was more severe than was actually appropriate considering the possibility of rehabilitation and deterrence." (Civilian Defense Counsel's RCM 1106 Response dated March 12, 1997.) We reject both arguments.

Initially, we note that appellant's claim, as framed in his brief and in his post-trial affidavit, does not provide a sufficient factual basis for legal relief. *See Ginn, supra* at 248 (affidavit does not raise factual issue requiring a hearing). Both his declaration and military defense counsel's affidavit state that his request for mental health assistance was for his treatment during the pretrial and trial process. Absent an allegation and showing that the absence of this treatment somehow prejudiced him at trial, his claim is legally inadequate and can be dismissed on this basis alone. *Id.* at 246–47; *see generally United States v. Boone,* 49 MJ 187, 195–96 (1998); *cf. United States v. Breese,* 47 MJ 5, 7 (1997).

We further note that defense counsel's advice to appellant in this matter was substantially correct. Military law did not recognize an accused-psychologist privilege at the time of appellant's trial in 1996. *See* Mil.R.Evid. 501(d), Manual, *supra; cf.* Mil.R.Evid. 706. Moreover, appellant had not yet pleaded guilty, and his disclosures to a psychologist could possibly have been used against him. *See Mansfield,* 38 MJ at 418. While appellant was faced with a difficult decision to acquire treatment at the expense of confidentiality (*see Bordenkircher v. Hayes,* 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978) (criminal defendants face hard choices)), his defense counsel's recognition of this peril hardly constituted ineffective assistance.

■ Finally, civilian counsel's post-trial submissions raise a related question whether military defense counsel should have disregarded this self-incrimination peril and sought favorable defense psychological evidence for sentencing. In this regard, we note that appellant subsequently pleaded guilty, and after trial, a mental health professional did provide some favorable defense evidence in his report. In particular, he reported appellant's own sexual molestation at the age of 11 and gave his opinion that appellant had "very good rehab potential . . . [and he] should prove to be an excellent therapy candidate." However, evidence of appellant's prior molestation was presented at his court-martial, and numerous lay witnesses testified to his otherwise good character. In our view, defense counsel's advice, *i.e.,* to avoid unprivileged medical assistance, was a reasonable tactical decision which we will not second-guess. *See generally United States v. Bray,* 49 MJ 300, 305 (1998); *cf. United States v. Clark,* 49 MJ 98, 100–01 (1998).

The decision of the United States Air Force Court of Criminal Appeals is affirmed.