UNITED STATES

v.

**Master Sergeant Daniel R. DEWRELL,
United States Air Force.**

ACM 33085.

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 7 Nov. 1997.

Decided 18 Nov. 1999.

Appellate Counsel for Appellant: Captain Tishlyn E. Taylor (argued), Gaylene McCallum, Colonel Jeanne M. Rueth, Colonel Douglas H. Kohrt, Lieutenant Colonel Ray T. Blank, Jr., Major Robin S. Wink, and Captain Teresa L. Davis.

Appellate Counsel for the United States: Lieutenant Colonel Ronald A. Rodgers (argued) and Colonel Anthony P. Dattilo.

Before SNYDER, Chief Judge, SENANDER, Senior Judge, and SCHLEGEL, Appellate Military Judge.

## OPINION OF THE COURT

SNYDER, Chief Judge:

Tried by a general court-martial composed of officer members, appellant, contrary to his pleas, was convicted of committing an indecent act upon the body of a female less than 16 years of age. Article 134, UCMJ, 10 U.S.C. § 934. He was sentenced to a dishonorable discharge, 7 years' confinement, forfeiture of all pay and allowances, and reduction to E–1. The convening authority reduced the forfeitures to $500 pay per month for 7 years, directed waiver of the remaining forfeitures for the benefit of appellant's dependent daughters pursuant to Article 58b, UCMJ, 10 U.S.C. § 858b, but otherwise approved the sentence as adjudged. He asserts six assignments of error. Finding no error prejudicial to appellant's substantial rights, we direct administrative relief for the *ex post facto* violation but otherwise affirm.

### I. Restriction Of *Voir Dire*

Appellant avers the military judge committed prejudicial error by refusing to query the members on an area requested by trial defense counsel. We find no prejudice inured

to appellant as a result of either the military judge's methodology or ruling.

Both trial and trial defense counsel were allowed to question the members selected for individual *voir dire*. The military judge, however, did not allow either counsel to question the members during group *voir dire*. Instead, he required counsel to submit written questions which they desired posed to the members and, based thereon, the military judge queried the members himself. He did not read the questions verbatim but, using counsel's questions as a guide, formulated his own questions to cover the areas addressed in counsel's questions. Appellant's specific complaint regarding this assignment of error focuses on four of the written questions submitted by his counsel which, appellant avers, the military judge failed to address to his prejudice. They are:

4. Is there any member of the panel who has a close friend, neighbor, or relative (to include spouse), who works in the field of law enforcement, teaching, medicine, psychology, psychiatry, or social work services;

8. Is there any member of the panel who believes that teen age girls, solely because of their age, are not mentally capable of manifesting lack of consent to sexual advances;

9. Is there any member of the panel who believes that teen age girls, because of their age, believe that they are required to acquiesce to sexual advances of an adult because that person is an adult; and,

10. Is there any member of the panel who believes that preteen [sic] age girls would not fabricate allegations of sexual misconduct?

During the Article 39(a), UCMJ, 10 U.S.C. § 839(a), session prior to individual *voir dire*, civilian trial defense counsel advised the military judge that he did not believe the military judge's questioning of the members addressed the above questions, and he requested that he do so in order that appellant might intelligently exercise his challenges. The military judge responded that his questions during group *voir dire* had sufficiently covered the subject matter of the questions.

■ The standard of review for this issue is clear abuse of discretion. *United States v. Belflower,* 50 M.J. 306 (1999); *United States v. Williams,* 44 M.J. 482, 485 (1996) (citing *United States v. Loving,* 41 M.J. 213, 257 (1994), *aff'd,* 517 U.S. 748, 116 S.Ct. 1737, 135 L.Ed.2d 36 (1996) and cases cited therein); *United States v. Jefferson,* 44 M.J. 312 (1996). Rule for Courts–Martial (R.C.M.) 912(d) governs *voir dire* of the court members. R.C.M. 912(d) parallels federal practice, as it vests discretion in the military judge as to how the court members will be examined, either by the military judge, counsel, or both. *Jefferson,* 44 M.J. at 318–19. The military judge has broad discretion with regards to any examination of the members beyond that required to ensure the members are statutorily qualified to sit on the case. *See id.* at 324 (Cox, C.J., dissenting). Accordingly, the military judge did not commit any error by conducting group *voir dire* himself. R.C.M. 912(d).

With regards to question 4, trial defense counsel informed the military judge that it was necessary to

> [D]etermine whether or not any member of the panel is close enough with someone who would be necessarily involved in child abuse cases and who might have knowledge that would come to bear during the course of the discussions in the jury room that we are totally unaware of. And, in order to intelligently exercise our peremptory challenge, we would ask that you reconsider your apparent decision not to ask that question of the members.

■ Although the military judge did not use the exact questions submitted by trial defense counsel, he adequately covered the general subject matter sufficiently to uncover either a statutory disqualification or improper bias on the part of the members. *See Jefferson,* 44 M.J. at 319. The military judge specifically inquired if any of the members had ever sat as "a family advocacy team member or who works on some type of committee such as that," and whether "any member of the court had any legal or law enforcement training or experience, other than that we would expect of officers of your rank?"

While the military judge's questions did not extend to family or close friends of the members, we do not deem that prejudicial because of the instructions provided to the members. In full hearing of all of the members, the military judge cautioned a member who majored in criminal justice in college that all decisions must be made on the basis of the instructions that he, the military judge, would provide. Further, the military judge charged the court members that their decision must be based solely on the evidence presented in open court and in accord with the instructions on the law which he provided. Members are presumed to follow the instructions provided by the military judge. *United States v. Holt*, 33 M.J. 400, 408 (C.M.A.1991). As civilian trial defense counsel's request to the military judge reflects, his concern was that the members not base their decision on an improper basis, *i.e.*, a friend's or associate's experience or views. We believe the military judge's questions and instructions accomplished this.

■ With regards to question 10, the military judge clearly covered the subject matter when he asked if there was "anyone [on] the panel who believes that any particular person, whether they are an adult or a minor, simply because of their status, would automatically be telling the truth or not telling the truth?" *Belflower*, 50 M.J. at 309. Regarding questions 8 and 9, however, we find no basis on which to conclude that the military judge addressed that area of inquiry to the members. Nonetheless, to the extent that he may have abused his discretion via this oversight, we find no prejudice to appellant's rights.

■ While requesting the military judge to reconsider his decision not to address the questions as submitted, trial defense counsel stated that "[w]ith respect to questions 8, 9, and 10, this case revolves around an issue—*I would say the rape case in particular*—revolves around an issue of ... consent." (emphasis added). Only a clear abuse of discretion by the military judge *and* prejudice to the rights of the accused will garner relief on appeal. *Williams*, 44 M.J. at 485. Both prongs must be met: abuse of discretion and prejudice. Appellant was found not guilty of rape. Therefore, he clearly was not prejudiced thereby. Article 59(a), UCMJ, 10 U.S.C. § 859(a). *Williams*, 44 M.J. at 485.

■ Military judges are at liberty to assume considerable risks when deciding how they conduct *voir dire*. *Id*.; *Belflower*, 50 M.J. at 309. Nonetheless, when the military judge opts for the Federal model for conducting *voir dire*, maximum caution must be exercised to ensure that all appropriate areas requested by counsel are adequately addressed.

## II. Evidence of Prior Sexual Misconduct

### a. Background

Appellant was convicted of committing an indecent act upon the body of ADK, a female under 16 years of age, on 1 October 1995, by fondling her chest under her shirt and by placing her hands on his exposed penis. Prior to trial, trial defense counsel were duly informed that the Government intended to introduce the testimony of Specialist (Spec) C and portions of Ms P's, the complainant of the rape charge, testimony under Mil.R.Evid. 404(b) and 414. At trial, trial defense counsel submitted a timely motion *in limine* to exclude the testimony. The military judge deferred ruling on the motion until he heard Spec C's testimony during an Article 39(a) hearing out of the members' presence.

Spec C testified to events which occurred while she was between 11 and 13 years of age when she and her family resided across the street from appellant in Oklahoma City, Oklahoma, between 1987 and 1989. The first incident occurred when she went to appellant's home to baby sit for him and his wife. Spec C stated appellant was wearing short pants and working on his motorcycle in the garage. She observed that appellant had an erection when he pulled his penis out of his pants, placed her hands on it, and made her masturbate him. The second incident occurred when Spec C was sent to borrow a cup of sugar from the Dewrells. While at appellant's home for that errand, she had to use the bathroom. Appellant apparently had just finished showering, as he had only a towel wrapped around him. Spec C stated appellant pulled her into the bathroom,

locked the door, cornered her, then made her rub his penis. He also stuck his hand in her vagina and rubbed her roughly until he ejaculated. The last incident involved appellant showing Spec C pornographic magazines and a pornographic movie featuring Mickey and Minnie Mouse. She also testified that appellant always had an erection, he frequently exposed himself to her, and his penis was always hanging out of his short pants. Spec C stated she told her niece, who was approximately one and one-half years younger than her, as well as her uncle, who forbid her from going to appellant's home again. She stated further that appellant told her he would kill her uncle if she ever told him. Spec C never reported any of these incidents to law enforcement officials until she was contacted by special agents of the Air Force Office of Special Investigations in December 1996.

Appellant also was charged with raping Ms P when she was 15–years–old.[1] Her testimony was that, prior to the alleged rape, there were numerous incidents where appellant took her hand and forced it on his penis and forced her to masturbate him, as well as his fondling of her breasts and digitally penetrating her vagina. These incidents occurred in appellant's automobile when he would stop while transporting Ms P back to her home after babysitting for him.

During the argument on admissibility, trial counsel argued that Spec C's testimony was "frankly, [ ] a textbook case as to why we have 413 and we have 414, and why the evidence should be admitted." Civilian trial defense counsel, on the other hand, argued that the events to which Spec C testified were too dissimilar to the circumstances of the charged offense to be admissible, citing the force involved and the fact she was awake, whereas ADK was in bed. Further, trial defense counsel proffered the fact that he had statements from Spec C's niece and uncle, wherein each denied ever being told about such incidents.

The military judge ruled that,

I have considered the evidence and determined that under both Military Rule of Evidence 404(b) and Military Rule of Evidence 414 at least some of the testimony of Spec C will be admitted.

I find that the acts of having young girls, between the ages of 10 and 15—grabbing their hands, putting their hands on his penis, and masturbating him—that evidence is of such similar nature that I believe it is admissible under both 404(b) and Military Rule of Evidence 414.

Now in my balancing test under Military Rule of Evidence 403, I decided that the full scope of the testimony of Spec C will not be admitted. In other words, the statements concerning trapping her in the bathroom and the other acts don't go to the acts that we're talking about, especially with regard to [ADK]. Again, part of my reasoning here is that the prejudicial effect of that type of evidence would outweigh the probative value—substantially outweigh the probative value. However, on the masturbating, I think that it is very probative, and by limiting it I don't think the prejudicial effect substantially outweighs the probative value.

Spec C testified before the members within the parameters set by the military judge. During the instruction of the members on findings, the military judge provided a limiting instructions, as follows:

Each offense must stand on its own and you must keep the evidence of each offense separate. The burden is on the prosecution to prove each and every element of each offense beyond a reasonable doubt. As a general rule, proof of one offense carries with it no inference that the accused is guilty of any other offense. However, you may consider any similarities in the testimony of Ms [P], [ADK], and Spec C concerning masturbation with regard to the Specification of Charge II.

1. Appellant was found not guilty of this offense (Specification and Charge, Charge I). The lesser included offense of carnal knowledge was not before the members because Congress' suspension of the applicable statute of limitations applied only to the rape offense. *See* 18 U.S.C. § 3283; Article 43, UCMJ, 10 U.S.C. § 843; *United States v. McElhaney*, 50 M.J. 819 (A.F.Ct. Crim.App.1999).

**b. Discussion**

Mil.R.Evid. 404(b) provides, in part, as follows:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .

Mil.R.Evid. 413 provides, in part, as follows:

(a) In a court-martial in which the accused is charged with an offense of sexual assault, evidence of the accused's commission of one or more offenses of sexual assault is admissible and may be considered for its bearing on any matter to which it is relevant.

(c) This rule shall not be construed to limit the admission or consideration of evidence under any other rule.

(d) For purposes of this rule, "offenses of sexual assault" means an offense punishable under the Uniform Code of Military Justice, or a crime under Federal law or the law of a State that involved—

(1) any sexual act or sexual contact, without consent, proscribed by the Uniform Code of Military Justice, Federal law, or the law of a State;

(3) contact, without consent of the victim, between the genitals or anus of the accused and any part of another person's body[.]

Mil.R.Evid. 414 reads, in part, as follows:

(a) In a court-martial in which the accused is charged with an offense of child molestation, evidence of the accused's commission of one or more offenses of child molestation is admissible and may be considered for its bearing on any matter to which it is relevant.

(c) This rule shall not be construed to limit the admission or consideration of evidence under any other rule.

(d) For purposes of this rule, "child" means a person below the age of fourteen,[2] and "offense of child molestation" means an offense punishable under the Uniform Code of Military Justice, or a crime under Federal law or the law of a State that involved—

(1) any sexual act or sexual contact with a child proscribed by the Uniform Code of Military Justice, Federal law, or the law of a State;

(2) any sexually explicit conduct with children proscribed by the Uniform Code of Military Justice, Federal law, or the law of a State;

(4) contact between the genitals or anus of the accused and any part of the body of a child[.]

(g) For purposes of this rule, the term "sexually explicit conduct" means actual or simulated:

(3) masturbation[.]

Civilian trial defense counsel's written motion *in limine* is a blanket objection to any "evidence of uncharged misconduct under the provisions of M.R.E. [sic] 413, 414, and 404(b)," without further specificity. Trial counsel's reply, however, appears to address the extrinsic incidents involving Ms P which, because she was over 14 years of age at the time, the prosecution deemed admissible as prior acts under Mil.R.Evid. 413, as well as Spec C's testimony under Mil.R.Evid. 414. Further, as reflected in the limiting instruction set forth, *ante*, the military judge instructed the members that they could consider the similarity, if any, of the incidents related by Ms P as well as Spec C. *Ergo*, while the military judge did not specifically state that he was admitting the testimony of Ms P and Spec C under different rules, such was the case. However, this factor will not impact our substantive analysis, as the same principles apply to the testimony of both witnesses under Rules 413 and 414.

■ Appellant first avers that admitting the evidence in question under Mil.R.Evid.

2. On the date of appellant's trial, the 1998 amendment raising the age to 16 was not effective.

414 violated the Due Process and Equal Protection Clauses of the Constitution. Appellant's brief is silent on why the evidence admitted under Mil.R.Evid. 413 is not included in this facial constitutionality attack. In any event, the challenge fails. This Court previously has held that Mil.R.Evid. 413 is constitutional. *United States v. Wright,* 48 M.J. 896 (A.F.Ct.Crim.App.1998), *pet. granted,* 52 M.J. 349 (1999). We discern no basis on which to conclude that a different result is required with respect to Mil.R.Evid. 414, and we hold it does not violate either the Fifth or Sixth Amendment. *Id.* We now address the merits of the evidentiary issue.

■ Our standard of review for determining if the military judge was correct in admitting the evidence is abuse of discretion. *United States v. Sullivan,* 42 M.J. 360, 363 (1995); *United States v. Acton,* 38 M.J. 330, 332 (C.M.A.1993); *United States v. Dorsey,* 38 M.J. 244, 246 (C.M.A.1993). Before proceeding with our analysis, however, we first must clearly delineate whether the military judge effectively admitted the contested testimony under Rules 404(b), 413, and 414, or only the latter two.

As reflected in the military judge's findings, *ante,* he admitted the contested testimony under Mil.R.Evid. 404(b), 413, and 414, as proffered by the prosecution. In *United States v. Henley,* 48 M.J. 864 (A.F.Ct.Crim. App.1998), this Court held that, because of its more restrictive conditions on admissibility, when evidence is properly admitted under Rule 404(b), any issue regarding admissibility under Rule 414 is mooted. *Id.* at 870. In the instant case, however, we deem it inappropriate to apply that rule. First, neither trial counsel's proffer nor the military judge's findings articulated a specific purpose, other than propensity, for which the evidence was admissible, which fails the second prong of the *Reynolds* test. *United States v. Reynolds,* 29 M.J. 105, 109 (C.M.A.1989). Second, the Rule 403 balancing test conducted by the military judge was not in accord with that normally done with respect to evidence being considered under Rule 404(b). Third, the limiting instruction provided the members was not a Rule 404(b) limiting instruction, as it did not instruct them that the evidence was

not to be considered for appellant's propensity to commit similar offenses. *See, e.g., United States v. DiCupe,* 21 M.J. 440 (C.M.A. 1986). For these reasons, we must determine the evidence's admissibility under the guidelines applicable to Rules 413 and 414.

■ The first issue for any item of evidence is relevance. *See* Mil.R.Evid. 401, 402. As prior *dicta* on this issue have intimated, in view of the language Congress used in Rules 413 and 414, relevancy is all but mandated. *See United States v. Casteel,* 45 M.J. 379, 385 (1996); *United States v. Hughes,* 48 M.J. 700, 730 (A.F.Ct.Crim.App.1998) (Snyder, S.J., concurring in the result). Admissibility, however, is not mandated, as the evidence's probative value still must be tested against its prejudicial effect in accordance with Mil. R.Evid. 403. *United States v. Larson,* 112 F.3d 600, 605 (2d Cir.1997*); Hughes,* 48 M.J. at 716. Viewed within this liberal framework, the testimony of Ms P and Spec C clearly made the existence or nonexistence of a material fact in issue more or less likely, Mil.R.Evid. 401, 402, which brings us to the issue of the probative value of their testimony.

Precedents which have reviewed the history of the progenitor of Rules 413 and 414–type evidence all agree that the issue with so called "propensity evidence" is not its probative value. Indeed, it is generally highly probative. *See, e.g., Michelson v. United States,* 335 U.S. 469, 475–76, 69 S.Ct. 213, 93 L.Ed. 168 (1948); *United States v. Guardia,* 135 F.3d 1326, 1331 (10th Cir.1998) (citing *Old Chief v. United States,* 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997)); *Wright,* 48 M.J. at 900 n. 2. Consequently, the salient issue in the instant case, as it most likely will be in all cases addressing admissibility under Rules 413 and 414, is whether the military judge abused his discretion in the manner by which he applied Rule 403 and determined that the probative value of the testimony of Ms P and Spec C was not substantially outweighed by its prejudicial effect.

Our superior court has yet to decide an issue squarely under either Rule 413 or 414. Nonetheless, a solid consensus is developing among the Federal circuit courts of appeals

that the Rule 403 balancing test is to be applied in a broad manner which favors admission. *See e.g., United States v. LeCompte,* 131 F.3d 767, 769 (8th Cir.1997) (Rule 403 must be applied to allow Rule 414 its intended effect); *accord United States v. Mound,* 149 F.3d 799, 800 (8th Cir.1998) (trial court must apply 413, 414, and 415 in a way sufficient to accomplish the effect intended by Congress); *Larson,* 112 F.3d at 605 (Congress intended 414's temporal scope to be broad). The Tenth Circuit appears to be the lone holdout attempting to adhere to the pre–413, 414 Rule 404(b)-type balancing test, its rhetoric to the contrary notwithstanding.

The Tenth Circuit has expressed agreement that Rule 413 contains a presumption in favor of admissibility, subject to application of Rule 403, *United States v. Enjady,* 134 F.3d 1427, 1431 (10th Cir.1998), and also indicated agreement with the principle that Rule 414 favors a policy of liberal admission of propensity evidence, Rule 403 notwithstanding. *Id.* (citing *United States v. Meacham,* 115 F.3d 1488, 1491 (10th Cir.1997)). Nonetheless, claiming to stake out a middle ground between a restrictive application and the Eighth Circuit's approach, the Tenth Circuit specifically rejected the broad approach of the Eighth Circuit by concluding that Rule 403 would be applied to Rule 413 and 414 evidence in the same fashion as evidence offered under other rules which favor admission. *Guardia,* 135 F.3d at 1331. Further, the trial judge must make a detailed record of findings and application of the Rule 403 balancing test. *United States v. Castillo,* 140 F.3d 874, 884 (10th Cir.1998) (case remanded because record insufficient to reveal propriety of ruling).

On balance, we deem the Tenth Circuit's approach too restrictive. If Rule 403 is to be applied to Rules 413 and 414 in the same manner as 404(b) and the other rules of evidence, then Rules 413 and 414 effectively have been neutralized if not eviscerated. Therefore, at least until our superior court speaks on the matter, we opt for an approach which we believe accomplishes the purposes of the rules. The *Hughes* majority opinion was silent on a definitive test for applying Rule 403 to Rule 414 evidence. However, I did propose a balancing test for this purpose in my separate opinion. *Hughes,* 48 M.J. at 731. That is the rule we now adopt for the Air Force.

We hold that, when applying the Rule 403 balancing test to Rule 413 and 414 evidence, the military judge will test for whether the prior acts evidence will have a substantial tendency to cause the members to fail to hold the prosecution to its burden of proof beyond a reasonable doubt with respect to the charged offenses. *Id.* It is only when the prior acts evidence is deemed to meet this test that its prejudicial value will be deemed to *substantially* outweigh the probative value of the prior acts evidence in issue and thereby render exclusion of the evidence appropriate.

 The primary factors for the military judge's consideration when performing the balancing test is whether the evidence will contribute to the members arriving at a verdict on an improper basis, *Mound,* 149 F.3d at 802; *Guardia,* 135 F.3d at 1330–31; the potential for the prior acts evidence to cause the members to be distracted from the charged offenses; and, how time consuming it will be to prove the prior acts. *See id; Enjady,* 134 F.3d at 1433. The probative value of the evidence, as with relevancy, should be determined by assessing the similarities between the prior acts and the charged offenses as well as the clarity of the witness' recall of the prior acts. If the witness' recall is clear and firm, and the impact of the alleged prior acts on the witness is still apparent, the greater will be the probative value. *See Larson,* 112 F.3d at 605. Further, remoteness also may be offset by the apparent reliability of the source of the evidence, as Congress intended the temporal scope of Rules 413 and 414 to be broad. *Id.* We now apply these principles to the instant case.

 After hearing Ms P's testimony, and Spec C's testimony out of the presence of the members, it is clear the military judge found, by a preponderance of the evidence, that the members could find that appellant committed the acts in question. *See Huddleston v. United States,* 485 U.S. 681, 108 S.Ct. 1496,

**610**

99 L.Ed.2d 771 (1988); *United States v. Mirandes-Gonzalez*, 26 M.J. 411 (C.M.A.1988). The military judge properly assessed the relevancy of the evidence by analyzing the similarities between appellant's prior acts and the charged offenses. *See Larson*, 112 F.3d at 605. He then excluded the testimony which was dissimilar to the charged offense. Further, he provided a clear limiting instruction to the members on how they were to use the evidence. The military judge did not have the benefit of any military precedent on Rule 413 or 414, but yet handled the issue deftly. We find no abuse of discretion by virtue of his admitting Spec C's testimony and the relevant portions of Ms P's testimony.

With regards to the offense involving ADK, she was the only witness. This is precisely the situation Congress intended to address via Rules 413 and 414. Further, it is clear by virtue of the members finding appellant not guilty of rape that they used the prior acts evidence as instructed by the military judge. Appellant is not entitled to any relief on this assignment of error. Before addressing the remaining assignments of error, we deem further comment on the issue of propensity appropriate.

■ While it is becoming increasingly apparent that our Federal counterparts are admitting Rule 413 and 414 evidence as propensity evidence, and even calling it that, *see, e.g., LeCompte*, 131 F.3d at 770, we believe the manner by which the military judge addressed the issue in the instant case is the preferred mode. He did not use the term, "propensity," but still executed the intent of the rules. Nonetheless, if trial counsel should desire to argue an accused's propensity to commit similar offenses as a matter for the factfinder to consider on findings, the military judge must be alert to instruct the members that they may not convict an accused solely on the basis of propensity, that any evidence of propensity is but one factor for their consideration, and that, on the basis of all the evidence, they must be convinced of the accused's guilt beyond a reasonable doubt. Finally, as the military judge did in the instant case, giving or repeating a spillover instruction also will ensure the members

make proper use of propensity evidence. *Cf. United States v. Myers*, 51 M.J. 570 (N.M.Ct. Crim.App.1999) (held failure to give spillover instruction prejudicial error even though one offense would have been admissible under Rules 413 and 414).

### III. Ineffective Assistance of Counsel

#### a. Trial Tactics

Appellant asserts that his trial defense counsel were ineffective in representing him before his court-martial. Appellate defense counsel aver that "trial defense counsel failed to adequately challenge the government's case; failed to present a defense case during findings, even though a number of potential witnesses were reasonably available; and failed to present an adequate sentencing case."

Appellate defense counsel primarily attack the manner in which trial defense counsel cross-examined ADK, claiming he didn't probe aggressively enough into false or inconsistent statements allegedly made by her and that he didn't do a thorough enough job of cross-examining her mother. With regards to the sentencing case, appellate defense counsel attack civilian trial defense counsel's decision not to call live witnesses in favor of relying on appellant's personnel records which were introduced by trial counsel. *See* R.C.M. 1001(b)(2). During oral argument, appellant defense counsel argued fervently that trial defense counsel should have called live witnesses during sentencing in order to "humanize" appellant, and that official Air Force records were insufficient to adequately present appellant to the members.

■ Whether counsel's performance is ineffective is measured by the Supreme Court's standards promulgated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and its ever growing progeny. The first and foremost teaching of *Strickland* is that counsel's competency is presumed, and appellant has the substantial burden of rebutting that presumption. When testing for whether an appellant has carried this burden, this Court resolves three basic questions:

(1) Are the allegations made by appellant true; and, if they are, is there a reasonable explanation for counsel's actions in the defense of the case? (2) If they are true, did the level of advocacy fall measurably below the performance ordinarily expected of fallible lawyers? [and] (3) If ineffective assistance of counsel is found to exist, is there a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt?

*United States v. Polk*, 32 M.J. 150, 153 (C.M.A.1991) (citation omitted); *accord United States v. Lonetree*, 35 M.J. 396, 412–13 (C.M.A.1992); *United States v. Scott*, 24 M.J. 186, 188 (C.M.A.1987). "[W]e do not scrutinize each and every movement or statement of counsel. Rather, we satisfy ourselves that an accused has had counsel who, by his or her representation, made the adversarial proceedings work." *United States v. Murphy*, 50 M.J. 4, 8 (1998) (citing *United States v. DiCupe*, 21 M.J. 440 (C.M.A.1986)). We focus not on what the counsel could have done, but what he was constitutionally required to do. In this regard, trial defense counsel's tactics will not be second-guessed on appeal. *United States v. Morgan*, 37 M.J. 407 (C.M.A.1993); *United States v. Stephenson*, 33 M.J. 79 (C.M.A.1991); *United States v. Rivas*, 3 M.J. 282 (C.M.A.1977).

 Interestingly, appellate defense counsel aver that, because the evidence was so weak, the fact that appellant was found not guilty of the rape should not be accorded any weight whatsoever. We, however, do not accede to this assessment of either the evidence on the rape charge or trial defense counsel's performance. Civilian trial defense counsel, Mr. Cohen, and detailed military counsel, Major (Maj) Hagen, obviously take issue with appellate defense counsel's assertions. Mr. Cohen advises that,

At the Article 32 hearing [appellant] and I had an opportunity to see the video taped interview of [ADK].... After seeing the video tape I was convinced that there was little material for cross-examination; that she presented in a manner which, in my judgment (I have practiced as a defense counsel before military courts in Europe for over 29 years ... ) would convince a

jury that she was credible. Moreover, it was my belief that there was a substantial risk that a clumsy or vicious cross-examination of this child witness could be devastating to [appellant].... I discussed my observations and assessments with [appellant].... During the course of preparing for trial I had numerous discussions with Maj Hagen as to what we could do in the face of evidence we both felt was overwhelming.... We went to trial recognizing that the only hope of a full acquittal was, after all the motions and objections were resolved, to convince the jurors though [sic] cross-examination, that the complainants' allegations were not sufficiently corroborated to support conviction.... If on review it appears that the number of questions posed [on cross-examination] were too few I can only say that the decision to change the direction of cross or not to cross on a given topic or to terminate cross was a tactical decision based on my assessment of the evidence and the chemistry in the courtroom. My closing argument is also based on my perception of the evidence and on what appear to [be] "reasonable" to a jury. If, on review, it should appear that my argument on a given issue was too brief or too long I can only repeat that the structure of an argument and the length of time devoted to any given issue is a tactical decision based on what I believe the evidence reasonably supports.

With regards to the decision not to put on a sentencing case, Mr. Cohen states that,

I explained to [appellant], and he, prior to trial, accepted my analysis and my advice to not produce any live sentencing witnesses. It was my opinion that the documentary evidence available and submitted clearly established that he had been an outstanding duty performer and that his contributions to the Air Force had been significant. I felt that the only issue which was not addressed by the documentary evidence was potential for rehabilitation. No character witness could fairly comment, in the event of conviction, on potential for rehabilitation, in the face of denial [of committing the offenses]....

Mr. Cohen's affidavit reflects tactical decisions with which defense counsel are entrusted and which we expect them to make. The record of trial clearly supports his tactical choice to make contesting the rape offense his primary focus, for appellant would have faced a possible maximum punishment of life imprisonment if convicted. Further, our review of the record does not disclose any basis on which to conclude that Mr. Cohen's tactical decisions were, under the circumstances then existing, unreasonable. There is no controversy regarding whether Mr. Cohen and Maj Hagen conducted an adequate investigation prior to making those tactical decisions. Their undisputed affidavits recount their unsuccessful efforts at discovering evidence to counter, or at least defuse, Ms P's and Spec C's testimony. All of the areas for which appellate defense counsel criticize trial defense counsel address matters of degree, for trial defense counsel in fact addressed all of those areas through cross-examination or documentary evidence. Unlike appellate defense counsel, we do not ignore the fact that appellant was acquitted of rape, as that factor certainly vindicates the reasonableness of trial defense counsel's tactics.

While not detracting from the fervency with which appellate defense counsel averred that appellant should have been humanized via live witnesses, and their other averments, the essence of their arguments is that they, with the benefit of not inconsiderable hindsight, would have tried the case differently. As this Court has stated previously, this does not a case of ineffective assistance of counsel make. *See Henley*, 48 M.J. at 873. Therefore, in accordance with the second principle of *United States v. Ginn*, 47 M.J. 236, 248 (1997), we hold that the above averments of appellate defense counsel are based on speculative or conclusory observations instead of specific facts.

**b. Claimed Abridgement of Right To Testify**

We now address appellant's personal claim that civilian trial defense counsel rested without affording him an opportunity to testify in his own behalf and that he was unaware that

his counsel's tactic was not to present a case on the merits.[3] Before addressing appellant's averment on the merits, we first will briefly review the applicable standard of review.

■■■ Our consideration of the applicable precedents revealed that, if an appellant or petitioner gets past the formidable obstacle of waiver, there is a split among the Federal circuits, and several State jurisdictions, on whether an appellant's claim of deprivation of the right to testify in one's own behalf is an allegation of a constitutional error separate and apart from the right to effective assistance of counsel to be tested accordingly, *see, e.g., Jordan v. Hargett*, 34 F.3d 310, 316 n. 5 (5th Cir.1994); *Underwood v. Clark*, 939 F.2d 473 (7th Cir.1991); *Passos–Paternina v. United States*, 12 F.Supp.2d 231 (D.P.R. 1998), or another form of alleged ineffective assistance of counsel to be handled under the *Strickland* standard. *See, e.g., Brown v. Artuz*, 124 F.3d 73, 74 (2d Cir.1997); *United States v. Tavares*, 100 F.3d 995 (D.C.Cir. 1996); *United States v. Teague*, 953 F.2d 1525 (11th Cir.1992); *State v. Robinson*, 138 Wash.2d 753, 982 P.2d 590 (1999). To the extent that this Court has handled such allegations, it has been under the *Strickland* standard. *See generally United States v. Barnard*, 32 M.J. 530, 535–36 (A.F.C.M.R. 1990). Our superior court, however, has not spoken squarely on the issue. Although the right to testify in one's own behalf is a fundamental, personal right, exercise of the right in a particular court-martial, nonetheless, reduces itself to a tactical concern to be resolved between an accused and trial defense counsel. Consequently, we conclude it is a matter properly considered under the aegis of the *Strickland* guidelines.

The salient part of appellant's affidavit states as follows:

I spoke with both of my defense counsel at various times prior to trial about the possibility of testifying. At that time, I decided to wait and make that decision once we had seen how the trial was going. During a break in the trial, my defense counsel advised me against testifying, but I still

---

**3.** These are the specific claims which we distill from appellant's affidavit.

made no decision in that regard. At the conclusion of the Government's case, I assumed that my defense counsel would put on some kind of a case and wanted to see how that went before I decided whether to take the stand. However, as soon as the Government rested, my civilian defense counsel immediately stood up and stated that the defense also rested. We never again spoke about whether I should take the stand, and I never had the chance to make that decision.

Mr. Cohen states that

[Appellant's] allegation that he was not aware of his right to testify and that he was denied an opportunity to testify is absolutely false. Both Maj Hagen and I repeatedly discussed this issue with [appellant]. [He] initially wanted to testify ... but Maj Hagen and I both believed that he would only help the prosecution if he exercised his right to testify. We explained to him that, although the ultimate decision to testify or to remain silent was exclusively his decision, our advice was that he remain silent. We were, indeed, forceful in our recommendation, but we made it absolutely clear to him that the ultimate decision was his. Ultimately, he decided to accept our advice and he told us that he intended to remain silent. At the close of the Government's case I leaned over to [appellant] and he, once again, confirmed that he would be taking our advice and that he would be remaining silent.

I discussed with [appellant] the possibility of presenting character evidence both on the merits and on sentencing. It was my advice that, given the state of the evidence before the court, we would not be presenting any evidence on the merits. I explained that since [appellant] had agreed to accept our advice, before trial, about not testifying that we could not bring on truth and veracity witnesses and that "good soldier" evidence would not be very persuasive in this type of case.... [Appellant] understood the analysis and agreed; however, during the course of the proceedings he initially changed his mind again about testifying and, it was only after a heated discussion, that he decided again that he

would remain silent. The discussion at trial about remaining silent or testifying did not revolve around or even touch on the fact that we had not requested truth and veracity nor "good soldier" character witnesses.

Maj Hagen adds that

[Appellant] did state during preparation of the case and during the trial proceedings of his desire to testify. My assessment was that [appellant] should not testify during findings. I did not believe that he would come across to the jury favorably, nor did I think they would believe his denial to the charges. By taking the stand he would be opening himself up to cross-examination which I did not believe he could withstand. I did not think he had anything to offer his defense by testifying. I specifically recall discussing this in detail with him during the recess prior to the government's final witness. We were given the Chief of Justice's office. During that hour Mr. Cohen, [appellant] and I intimately discussed his desire to testify. We went over the case, his version of the facts and explained to him that in our professional opinion he would only hurt his case should he testify. However, we did advise him that it was his ultimate decision. He agreed that he would not testify in the case. I also recall after the government rests [sic] that the defense team briefly took a moment to concur one last time that we were not putting on any further evidence.

■ We now consider the impact of appellant's silence at trial on the burden he carries at this level. As stated, the right to testify in one's behalf is a personal right. The decision to testify or not is in the sole province of the accused after consultation with counsel. Air Force Standards for the Administration of Criminal Justice, Standard 4–5.2(a)(iii) (4 Oct. 1997). Further, because the right to testify in one's own behalf is of a firm, fundamental, personal nature, and deemed to be common knowledge, the military judge is not required to advise an accused, or insure that an accused has been advised, of the right to testify on the issue of

guilt or innocence. *United States v. Belizaire*, 24 M.J. 183 (C.M.A.1987).

 *Belizaire* is consistent with the prevailing Federal norm that the Court runs the risk of intruding into the confidential attorney-client relationship by inquiring into whether a criminal defendant not taking the witness stand is the result of a knowing waiver, ignorance, or otherwise. *See Underwood*, 939 F.2d at 476; *Passos–Paternina*, 12 F.Supp.2d at 238 and cases cited therein; *cf. Bell v. Evatt*, 72 F.3d 421, 430 (4th Cir.1995) (no due process right to an on-the-record inquiry into whether defendant consents to defense counsel's strategic decisions). Thus, not testifying in one's own behalf is deemed a knowing waiver. Therefore, to garner even an evidentiary hearing, an appellant must demonstrate that, by coercion or otherwise, his or her counsel affirmatively prevented him or her from testifying. *Id.* Currently, it is unclear as to how heavy this burden is within the military system. In the Federal system the burden is quite heavy because of the substantial interests involved. The Seventh Circuit framed the issue as follows:

> There is a grave practical difficulty in establishing a mechanism that will protect a criminal defendant's personal right ... to testify in his own behalf without rendering the criminal process unworkable. It is extremely common for criminal defendants not to testify, and there are good reasons for this, as we have seen. Yet it is simple enough after being convicted for the defendant to say, "My lawyer wouldn't let me testify. Therefore I'm entitled to a new trial." That's what Underwood did.
> \* \* \*

We agree with the First Circuit's ruling in *Siciliano v. Vose*, 834 F.2d 29, 31 (1st Cir.1987), that this barebones assertion by a defendant, albeit made under oath, is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied him. It is just too facile a tactic to be allowed to succeed. Some greater particularity . is necessary—and also we think some substantiation is necessary, *such as an affidavit from the lawyer who allegedly forbade his client to testify*—to give the claim suffi-

cient credibility to warrant a further investment of judicial resources in determining the truth of the claim....

*Underwood*, 939 F.2d at 475–76 (citations omitted) (emphasis added); *accord Passos–Paternina*, 12 F.Supp.2d at 239; *Robinson*, 982 P.2d at 596.

 The affidavits in *Underwood* and *Passos–Paternina* are remarkably similar to, if not more detailed than, appellant's in the instant case, and they were found woefully inadequate in the face of the record's silence and the *Strickland* presumption of competence. In *Robinson,* the petitioner had affidavits from bystanders who heard his protestations to his counsel that he desired to testify, plus his counsel confirmed his averments. *Id.* at 594–95. The overall tenor of these cases, especially the emphasized language in *Underwood*, suggests that, unless there is evidence from an independent source, *i.e.*, the record of trial or third parties, counsel's denial alone will defeat a claim that one was denied the right to testify. We cannot, however, confidently reach such a holding in the instant case because of the apparent underlying basis for the holding in *Ginn*, 47 M.J. at 248. The concurring judges in *Ginn* believe our superior court has adopted a requirement that the record of trial and appellate filings must conclusively refute an appellant's affidavit, rather than the Federal standard which requires a petitioner to refute the record. *See id.* at 249–51 (Gierke, J., concurring in part and in the result); *id.* at 251 n\* (Crawford, J., concurring in the result).

Therefore, we now assess appellant's, Mr. Cohen's, and Maj Hagen's affidavits in light of the mandate of *Ginn*, 47 M.J. at 248, for, before we can address the ultimate legal issue, we must first determine if there is any dispute regarding material facts between them which cannot be resolved by the record of trial. *Id.* Mr. Cohen's averment that appellant's claim regarding his testimonial rights is false appears, on first blush, to construct a direct contradiction between appellant and his trial defense counsel on a material fact which would necessitate a hearing to resolve the factual dispute. *Id.* We conclude, however, that any difference be-

tween appellant's recall and that of his trial defense counsel is in appellant's stated mental perception rather than discrepancies of material facts. Thus, the affidavits are in sufficient agreement, together with the record of trial, to allow us to proceed to the ultimate legal issue. *Id.; see United States v. Johnson*, 43 M.J. 192, 194 (1995).

The first critical, consistent factor which emerges from the affidavits is that appellant clearly acknowledges that he was advised of his testimonial rights and that he was advised not to testify. His affidavit acknowledges not only that the prospect of his testifying was discussed at various times during pre-trial preparation, but also during the trial itself. Appellant does not specify a definite time during the trial that his "defense counsel advised [him] against testifying." Maj Hagen's affidavit, however, states that it occurred during a recess prior to the government's final witness' testimony and that the defense team was allowed the use of the Chief of Justice's office for the conference. An affidavit by counsel which provides additional, uncontradicted information is not considered in conflict with an appellant's affidavit. *See United States v. Thompson*, 51 M.J. 431, 435 (1999). Further, the record of trial reflects a recess at this point in time of almost one hour in duration, so also there is confirmation from the record. *Ginn*, 47 M.J. at 248. But this does not end the matter.

Appellant's affidavit states that he made no decision regarding testifying after being advised not to, but it does not state that he communicated his indecision to his defense counsel, nor does it contradict his counsel's affidavits that he agreed with their advice not to testify. Further, appellant states that he assumed that his counsel were going to put on some kind of case, but again he does not aver that he communicated this to his counsel. An "assumption" is not equivalent to a denial that he was fully advised of his defense counsel's tactics of basing his defense solely on attacking the government's case. Appellant states that he never had the chance to make "that decision" regarding his testifying, but his affidavit confirms the repeated discussions on the matter. Finally,

the record demonstrates the unlikelihood that appellant's recall is correct.

As noted, *ante*, the record reflects that, before the last government witness, there was a recess of nearly an hour's duration. Further, after the defense rested without putting on a case, there was a two-hour recess prior to the Article 39(a), UCMJ, session on proposed instructions on findings. Finally, after the military judge advised appellant of his rights of allocation, R.C.M. 1001(a)(3), the record reflects the following exchange:

> MJ: Defense have you advised—excuse me, Mr. Cohen. Did you have something to say?
>
> \* \* \* \*
>
> CIV DC: Yes, Your Honor, we have discussed [sic] Master Sergeant Dewrell his rights to present evidence and to make a sworn or unsworn statement or a statement through counsel. And, in doing so, we have reviewed the Defense Exhibits that we have marked as Defense Exhibit D for identification, which we will be offering to the military judge. We have explained that the prosecution, of course, will be offering the enlisted personnel records of the accused, reflecting his entire service career. And *we have determined that for tactical reasons we will not be presenting any other evidence beyond that, to include the accused exercising his right to remain silent*.

(Emphasis added).

 In light of the referenced recesses and the above exchange, we believe the record compellingly refutes appellant's statement that he didn't have an opportunity to discuss the matter with his counsel. Further, while the above exchange occurred after findings, it reflects trial defense counsel's tactical thinking for the trial as a whole and the fact that appellant registered no protest.

We conclude that there is more than sufficient congruity between the affidavits, confirmed by the record of trial, to demonstrate

that appellant was fully apprised of his testimonial rights and that he made an informed decision regarding them. Appellant's claimed vacillation on the matter is not the same as a direct demand to testify which was ignored by his counsel. Further, to the extent that appellant's affidavit is a disavowal of the defense tactics at trial, he has failed to demonstrate either a conflict of interest or prejudice. *See United States v. Hicks,* 52 M.J. 70 (1999); *United States v. Lindsey,* 48 M.J. 93 (1998). Further, appellant retained Mr. Cohen's and Maj Hagen's services throughout the post-trial process without registering any complaint whatsoever. *See Passos–Paternina,* 12 F.Supp.2d at 241–42. Therefore, we find that the appellate filings and the record as a whole compellingly demonstrate the improbability of the facts alleged by appellant. *Ginn,* 47 M.J. at 248. *Ergo,* appellant has not raised sufficient grounds to rebut the presumption that his counsel were effective in their representation of him, and he is not entitled to any relief on this assignment of error.

### IV. *Ex Post Facto*

This issue was resolved in appellant's favor by *United States v. Gorski,* 47 M.J. 370 (1997). We will direct administrative relief in the decretal paragraph.

### V. Sentence Appropriateness

Appellant avers that his sentence is inappropriately severe. The primary basis for this averment is that he was sentenced to the maximum authorized punishment for his offense. In determining sentence severity, this Court must exercise its judicial powers to assure that justice is done and that the accused gets the punishment he deserves. Performing this function does not authorize this Court to exercise clemency. *United States v. Healy,* 26 M.J. 394, 395–96 (C.M.A. 1988). The primary manner by which we discharge this responsibility is to give individualized consideration to an appellant, including the nature and seriousness of the offenses and the character of the appellant's service. *United States v. Snelling,* 14 M.J. 267 (C.M.A.1982).

Applying the guidance of *Healy* and *Snelling,* we do not find appellant's sentence inappropriately severe. Article 66(c), UCMJ. In reaching this conclusion, we are not deaf to his complaints that he may have been impacted by the evidence admitted pursuant to Rules 413 and 414. The question, however, is whether he was improperly impacted. We must answer, no. Any evidence which is properly admitted on the issue of guilt or innocence is properly before the members to aid them in determining an appropriate sentence. R.C.M. 1001(f)(2)(A). Therefore, trial counsel was well within acceptable parameters when he argued that the members should also consider the testimony of Ms P and Spec C in their deliberation on sentence. *Cf. Larson,* 112 F.3d at 605–06 (prior acts evidence excluded on merits properly used by district court judge to elevate defendant's Criminal History Category two levels from I to III). Trial counsel did not ask the members to sentence appellant for the uncharged prior acts, *cf. United States v. Weisbeck,* 48 M.J. 570, 575–76 (Army Ct.Crim.App.1998), *rev'd on other grounds,* 50 M.J. 461 (1999), but only that they consider them. Further, the military judge, on two occasions, instructed the members that their duty was to sentence appellant for the offense for which he was convicted.

### VI. Decretal

Any execution of a reduction in grade and the collection of adjudged forfeitures prior to the date of the convening authority's action pursuant to Article 57(a), UCMJ, 10 U.S.C. § 857(a), is declared to be without legal effect. Any reduction in grade and such forfeitures already collected from appellant will be restored for the affected period at the appropriate pay grade. In executing this mandate, fiscal authorities shall accord appropriate consideration to the fact that appellant's dependents received waived forfeitures pursuant to Article 58b, UCMJ, 10 U.S.C. § 858b, for which there was no authority to waive. The record of trial is returned to The Judge Advocate General for appropriate action. The case need not be returned to this Court following administrative correction unless further appellate review is required.

Accordingly, finding no error prejudicial to the substantial rights of appellant, the findings and sentence are correct in law and fact, Article 66(c), UCMJ, and are hereby

AFFIRMED.

Senior Judge SENANDER[4] and Judge SCHLEGEL concur.

4. Senior Judge Senander participated on this case prior to his retirement.